Parker *v.* Rensselaer and Saratoga Railroad Company.

---

## PARKER *vs.* THE RENSSELAER AND SARATOGA RAILROAD COMPANY.

Where a railroad company, by an arrangement with another company, run their cars over the road of the latter company, and an injury is sustained by an individual, by the killing of his cow by the locomotive, which injury occurs not from any negligence in the running of the cars, but in consequence of the omission to erect cattle-guards or fences, the company owning the locomotive are not liable.

The provision in the general railroad act of 1848, requiring railroad companies to construct cattle-guards at all road-crossings, does not apply to streets in cities or villages.

Where, in an action against a railroad company to recover damages for an injury to the plaintiff's property, the complaint merely alleges that the injury was occasioned by the neglect to construct *cattle-guards,* a recovery cannot be had for an omission to build *fences.*

THIS was an appeal from a judgment rendered by a justice of the peace of Saratoga county. The county judge being disqualified, certified the appeal to this court. The action was brought to recover the value of a cow, killed on the defendant's railroad, in the village of Saratoga Springs, about the 1st of March, 1851. The complaint before the justice was as follows : "Plaintiff complains against defendants for willfully and negligently killing, wounding and maiming the plaintiff's cow, on

their railroad, in the village of Saratoga Springs; defendants having no cattle guards, as required by law, to his damage of $100." The defendants denied the allegations in the complaint. It was proved, on the trial, that in March, 1851, the plaintiff's cow was so injured, on the railroad, in the village of Saratoga Springs, by the plow of the locomotive, as to render it advisable to kill her. The cow was struck between Washington-street and the first switch north, in that village, about 30 feet from Washington-street. The train had got within a short distance of Washington-street as the cow came upon the track. She turned and followed along upon the track. She was carried 15 or 20 feet by the plow, till she struck the switch, where she was left, and remained till killed and carried away. The engineer did every thing in his power to prevent the collision, by shutting off the steam, giving the signal to break, &c. as soon as he saw the cow on the track, which was when she first came upon it, and when she was 50 feet from the cars. The engineer who had charge of the locomotive, was in the employ of the Saratoga and Schenectady Railroad Company. There were no fences along the line of the railroad, from Washington-street to the depot. There were fences along by the houses. There were no cattle guards built at the intersection of Washington-street, on either side. The testimony as to the cattle-guards and fences was objected to by the defendants, on the grounds, 1. That the defendants were not required by law to build fences there; 2. That the plaintiff's cow was wrongfully in the street, and that the defendants were therefore not bound to fence against her; and that the defendants were not bound by law to build cattle-guards at street crossings in *villages.* The objections were overruled, and the testimony received. The testimony was somewhat uncertain as to which company owned the locomotive that did the injury. The road on which the injury occurred belonged to the Saratoga and Schenectady Railroad Company. The act incorporating the defendants' company terminated their road at Ballston. The road from the depot to Washington-street is from 60 to 80 feet wide. It is from 30 to 60 feet from the center of the track. There were quite a number of houses along

the west side, between the depot and Washington-street. It appeared by an ordinance of the board of trustees of the village of Saratoga Springs, in existence at the time of the injury, that cows were prohibited from running at large at any time between the first day of October and the first day of May. The jury found a verdict for the plaintiff for $35, for which, with $5 costs, the justice rendered judgment.

*J. Knickerbacker, Jun.* for the appellants.

*C. S. Lester,* for the respondent.

*By the Court,* C. L. ALLEN, J. The first point raised by the counsel for the appellant is that the plaintiff failed to show the defendants to be the owners of the road upon which the injury happened. The act incorporating the defendants, (*Laws of* 1832, *ch.* 131,) terminated their road at Ballston; and it would seem from this, that the injury, if occasioned by want of cattle-guards or fences, was properly chargeable to the Saratoga and Schenectady Railroad Company, on whose road it happened. The 44th section of chapter 140, of laws of 1850, requires every corporation formed under the act, to erect and maintain fences on the sides of their road, and to construct and maintain cattle-guards at all road crossings, suitable and sufficient to prevent cattle and animals from getting on to the railroad. This duty was imposed, in this case, upon the Saratoga and Schenectady Railroad Company. And the same section makes them liable for such neglect; for all damages which shall be done, by their agents or engines, to cattle, horses or other animals thereon. The proof was uncertain, whether the locomotive was one belonging to the defendants, or to the Saratoga and Schenectady Railroad Company. But the engineer running it testified that he was in the employ of the Saratoga and Schenectady Railroad Company, at the time. There was evidence tending to show that the engine and train belonged to the defendants; and probably this was a question of fact for the jury, who came to the conclusion that they belonged to the defendants, and based their verdict upon

that fact. But by the acts of 1839, (chap. 218) and 1847, (chap. 222) cars of one road may run over the road of another company. And the evidence clearly showing that the road did not belong to the defendants, it appears to me that no liability was shown, in them, to erect either cattle-guards or fences, and that no willful or gross negligence having been proved or pretended, by the defendants' agents in running the cars, the plaintiff was not entitled to recover.

But suppose I am in an error in arriving at this conclusion, the next question that arises is, whether the defendants were required to erect cattle-guards in the streets of the village of Saratoga Springs. The 39th section of the general railroad act (*Laws of* 1850, *ch.* 140,) requires the bell to be kept ringing until the locomotive shall have crossed any traveled public road or street. The 40th section requires boards to be maintained across each traveled public road or street, containing the words "Railroad crossing. Look out for the cars." But it expressly declares that the section shall not apply to streets in *cities or villages, unless the corporation shall be required to put up such boards by the officers having charge of such streets ;* and then comes the 44th section, before quoted, requiring the company to "*construct and maintain cattle-guards at all road crossings.*" This question has been decided in this court in *Vanderkar* v. *The Rensselaer and Saratoga Railroad Company*, (13 *Barb.* 390.) It is there remarked that the sections in relation to ringing bells and putting up boards, require those acts to be done at the crossing of *roads or streets*, but that the requirement as to the construction of cattle-guards is on *road crossings ;* the statute obviously making a distinction between *roads and streets ;* and that cattle-guards in the streets of a city or village would be nuisances. The injury in the present case occurred in a street of the village of Saratoga Springs ; there were houses on one side of it, and the company had no power to shut up access to them, or to construct a nuisance upon the road. I think the case just cited controls the decision here.

It is said the defendants ought at all events to have erected fences, and that the cow, in consequence of the want of fences,

was frightened on to the road.  But the difficulty on this point is that the complaint does not allege the injury to have occurred for want of fences.  The only allegation is that it was occasioned by the neglect to construct *cattle-guards*, alone, and the whole negligence complained of is placed upon that sole ground.  Without considering the other questions presented, I think the judgment of the justice should be reversed.

Judgment reversed.

[CLINTON GENERAL TERM, July 4, 1853.  *Hand, Cady* and *C. L. Allen*, Justices.]