## BRACE *v.* NEW YORK CENTRAL RAILROAD COMPANY.

The statute requiring railroad corporations to maintain cattle guards at road crossings applies as well to streets which are crossed by railroads in villages as to country highways.

*It seems*, however, that where a village street crosses a railroad running along another street, the corporation is not to construct cattle guards longitudinally along its track so as to impede the passage along the street crossing it.

APPEAL from the Supreme Court. Action to recover the value of a horse, killed by the defendant's locomotive, in the unincorporated village of Gasport, in the town of Royalton, Niagara county. At the trial, these facts appeared:

The village is some six miles east of Lockport, upon the Erie canal, and the defendant's road passes through it. There is a highway or street, called the "Town Line Road," running north and south, across the railroad, the "State Road," so called, and the canal; and it is the principal street or highway. The canal, State road, and railroad, run nearly east and west, the State road being some six or eight rods south of the canal, and the railroad some fifteen or sixteen rods south of the State road. The defendant's depot is some twenty-five rods east of the "Town Line Road," and immediately east of a north and south road or street, which is some forty rods in length; its south end is connected with the State road, by a road or street south of the railroad, at the crossing of the latter, some fifteen or sixteen rods. The village contained thirty-seven houses, and a population of between two and three hundred, a portion of which is on the north side of the canal. There was no cattle guard upon the east side of the Town Line road. There had been one, but as it was inconvenient for foot passengers, passing from the Town Line road, along the railroad, to the depot, it had been filled up. The plaintiff's horse broke out of a lot, some miles south of the crossing, and ran rapidly along the Town Line road, and

approached the crossing as the train was coming from the west, and being frightened, turned on to the railroad track, and was overtaken and killed some six rods from the street or highway. The defendant offered to prove, by a witness, that he and two other men in the employment of the defendant were stationed at that crossing, for the purpose of preventing horses and cattle from going on to the track, and that they were at the crossing at the time the horse was killed, and endeavored to keep him back and prevent his going upon the track, but were unable to do so, on account of the great speed with which he approached the track. Upon objection, the evidence was excluded, and the defendant excepted. The defendant offered to prove, that complaints were made by the inhabitants of the village, that the cattle guard was a nuisance, and that in consequence of persons falling into it and being injured, while passing between the street and depot, the defendant caused it to be filled up. Upon objection, this evidence was excluded, and the defendant excepted. The only ground upon which the plaintiff claimed to recover was, that the defendant was bound to construct and maintain a cattle guard at the crossing, at the east line of the Town Line road or street. The court directed a verdict for the plaintiff, and the defendant excepted. Judgment was rendered on the verdict, and the defendant appealed to this court. The cause was submitted on printed arguments.

*Woods & Murray*, for the appellant.

*Gardner & Lamont*, for the respondent.

MARVIN, J. By the statute, the defendant was required to "construct and maintain cattle guards at all road crossings, suitable and sufficient to prevent cattle and animals from get·ting on to the railroad;" and it is declared, that until such cattle guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engineers, to cattle, horses or other animals thereon." (Sess. Laws 1850, p. 233, § 44.)

Brace *v.* New York Central Railroad Company.

The position of the defendant's counsel is, that the "Town Line Road" was a street, and that the statute has no application to a street, in a city or village. No statutory exemption is referred to, but this is the construction sought to be maintained of the words, "all road crossings."

. The Town Line road, so called, was a highway, and had existed as such, in the language of one of the witnesses, as long as he could remember. It did not cease to be a highway when a small village, grew up along its sides, nor when it crossed the canal, and extended on to other streets, opened for the use of the villagers. It was a highway, and, within the meaning of the statute, a road. The terms, highway and road, are constantly used as synomymous. They are so used in the chapter of the Revised Statutes, "Of Highways," &c. But, if we should call the highway, at the place of the crossing in question, a street, the liability of the defendant would not be changed. It would still be a road, within the meaning of the statute. Strictly, a street is a paved way, or road, but the term is used for any way or road in a city or village. It is defined by Bouvier (Law Dict.), "a road in a village or city;' and see Webster's Dictionary. Thus, a highway is a road, and a street is a road; and as the statute requires railroad corporations to construct and maintain cattle guards at all road crossings, it includes streets in villages and cities. The defendant in this case did construct cattle guards at this crossing, on each side of the road, and the one upon the west side still remained; but, as the inhabitants residing upon the Town Line road, were in the habit of passing from the road on to the railroad, and from thence along the railroad to the depot, some twenty-five rods, and from the depot back to the road, upon the same route, they complained of the cattle guard as a nuisance, and the defendant caused it to be filled up. It is not necessary to say, that such cattle guard was not a nuisance. The law expressly required its construction and maintenance. It may be well to call attention to the statute, declaring that "it shall not be lawful for any person, other than those connected with or employed upon the railroad, to walk along the track or

tracks of any railroad, except where the same shall be laid along public roads or streets." (§ 44.) The inhabitants had no right to walk along the track, and it was unlawful in them to do so.

The defendant's counsel refer to *Vandekar* v. *The Rensselaer and Saratoga Railroad Company* (13 Barb., 390), and *Parker* v. *The Same* (16 Barb., 315). In the former case, there was no "road crossing," and the question we are considering was not involved. The opinion was expressed, however, that cattle guards, in the streets of a city or village, would be nuisances; in which opinion I fully concur, understanding that the cattle guard is constructed across a street which crosses another street in which the railroad is constructed. Such cattle guard would arrest all travel along the street across which it should be constructed. This would be very different from the construction of a cattle guard across the railroad and along the outer margin of the street, the railroad not being constructed along, in a street. The opinion was also expressed, that the statute makes an obvious distinction between roads and streets, referring to the sections of the statute relating to the ringing of bells and putting up boards to give warning, in which both words are used. In the other case, the question was fairly up, as the railroad was not constructed along or upon a street where the cow was killed, but it crossed Washington street, in the village of Saratoga Springs, and there were no cattle guards at this crossing. It was held, that the general railroad act, requiring railroad companies to construct cattle guards at all railroad crossings, did not apply to streets in cities and villages, and that it was so decided in *Vandekar* v. *The Rensselaer and Saratoga Railroad Company, supra.* In support of this position, sections 39 and 40 of the general railroad act of 1850 are referred to, as indicating the intention of the legislature to make a distinction between the words, streets and roads; and that it was not its intention to include streets, by the words, "all road crossings," as used in section 44. Section 39 relates to the ringing of a bell when the railroad shall cross any traveled public road or street, or the

sounding of a steam whistle at the place where the railroad shall cross any such road or street, except in cities; and section 40 relates to the placing of boards across each traveled public road or street, where the same is crossed by the railroad, having upon them the words, "Railroad crossing; look out for the cars." This section is not to apply to streets in cities and villages, unless the corporation shall be required to put up such boards, by the officers having charge of such streets. In my opinion, no inference can be drawn from the word street, in those sections, that the legislature intended, by the use of the words, all road crossings, in section 44, to make a distinction between a road and a street, and to exclude the latter from the requirement of the 44th section, touching cattle guards. As we have seen, a street is a road in a village or city; and a road, in a city or village, is usually and properly called a street; though in the act of 1847 (ch. 426), "to provide for the incorporation of villages," the term road is generally used, instead of street (§§ 45, 57, subd. 23; § 58, subd. 3 and 5, &c.); and the words, street and highway, are also used, meaning the same thing.

If we consider the evil and danger against which the legislature intended to provide, I think we shall not hesitate to so construe the act as to include the crossing of roads or streets in villages. The object of the legislature, in the provisions relating to fences and cattle guards, was to exclude from the railroad all animals.

Experience had shown, that an animal upon the track is in great danger of being killed or maimed; and further, as to most animals, they greatly endanger, not only the property of the railroad company, but the limbs and lives of passengers. (See opinion of DENIO, J., in *Corwin* v. *The N. Y. and Erie R. R. Co.*, 3 Kern., 53.)

The purpose of cattle guards at road crossings is to prevent cattle and animals getting on the railroad, and they are quite as important in villages as they are in the open country, and, indeed, more so; for I apprehend that cattle and animals are more liable to be turned from the road or street, in a village,

on the railroad, if there is no obstruction, than in the open country, where they are less liable to be turned aside. These cattle guards are not in the street, or ought not to be. They do not, in the least, encroach upon or obstruct the highway or road. They are constructed at the sides of the highway, across the railroad bed, the rails spanning them, thus providing a way for the cars over them, and there are ditches or excavations of sufficient depth or width to prevent cattle or animals from getting on the railroad.

One of the positions of the counsel for the plaintiff, is that Gasport was not a village, and that the Town Line road could, therefore, in no sense, be styled a street. It is true that Gasport was not incorporated, nor did it contain the requisite number of inhabitants (300) to authorize it to become incorporated, under the general act to provide for the incorporation of villages. But I prefer to put our decision upon a broader reading of the statute, as already indicated. The judgment should be affirmed.

WRIGHT, J. There is a single question in this case, viz.: whether the duty was enjoined by law on the defendants to maintain a cattle guard at the crossing, near where the plaintiff's horse was killed. The general railroad act of 1850 provided that corporations formed under the act should " construct and maintain *cattle guards at all road crossings,* suitable and sufficient to prevent cattle and animals from getting on the railroad; and until such cattle guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines to cattle, horses or other animals thereon; and after such guards shall be duly made and maintained, the corporation shall not be liable for any such damages, unless negligently or wilfully done." (Laws of 1850, chap. 140, § 44.) In 1854 this section of the general act was amended so as to require all railroad companies " to construct, when the same has not already been done, and thereafter maintain *cattle guards at all road crossings,* suitable and sufficient to prevent cattle, horses, sheep and hogs from

getting on such railroad." And the same liability for an omission was imposed as by the general act. (Laws of 1854, chap. 282, § 8.) In *Corwin* v. *The New York & Erie Railroad Company* (3 Kern., 42), it was held that this duty to construct and maintain cattle guards at road crossings rested on the railroad corporation; and as one of the consequences of the neglect or omission, the corporation was to be liable (irrespective of any negligence in their owner) for all damages that should be done by its agents or engines to cattle, horses or other animals on its railroad. It is not denied by the defendants that the statute imposes the duty on them to build and maintain cattle guards at "road crossings," but they contend that the statute does not apply to streets in cities and villages; and as Gasport, where the injury happened, was a village, they were not bound to keep or maintain any cattle guard at that place.

The whole force of the defendants' point, in this respect, consists in a criticism on the words, "road crossing," in the statute; they contending that road, as used in the statute, means only a highway in the country, and that the term road crossing, does not embrace, nor was it so intended, a place in a village where the railroad intersects or crosses a street thereof. The suggestion receives no countenance from the statutes of 1848 and 1850, in relation to the organization and powers of railroad corporations. A glance at those acts will show clearly, that in numerous instances, the terms road and highway mean and include streets, and that they are used synonymously. The power to construct the railroad across a road, highway, canal, &c., under the act of 1848, clearly embraced streets in a village. If it did not, then these railroad companies had no power to cross a street. By the act of 1850, it was provided, that when the railroad crosses a highway, the highway may be carried under or over the railroad. Here, neither roads or streets are mentioned, but they are manifestly embraced in the term highway. It cannot be doubted that this provision applies to streets, and to cities and villages. So, also, the engine bell is to be rung eighty rods from the place where the railroad shall cross any traveled public road

or street, or a steam whistle is to be sounded that distance from the place where the road shall cross any such road or street, except in cities.    Boards, painted with the warning, "Railroad crossing," &c., are to be maintained across each traveled public road or street, on the same level, &c. ; but this section is not to apply to streets in cities or villages, unless the railroad company shall be required to put up such boards, by the officers having charge of such streets.. (Laws of 1850, chapter 140, §§ 24, 39, 40.)    The various exceptions of cities and villages, and sometimes cities alone, and the reference to the trustees of villages, &c., indicate that when a village was intended to be excepted, it was specifically mentioned.

I find nothing in the statute from which it may be fairly inferred that the legislature intended to limit the duty of railroad corporations to the maintenance of cattle guards at crossings of public roads or thoroughfares outside of villages.    They certainly have not said so in terms; and the phrase "at all road crossings" is quite comprehensive enough to include all crossings of public highways, whether called streets in a village or roads outside thereof.    The reason and declared object of the statute for maintaining these cattle guards is to prevent cattle from getting on the railroad.    This is as necessary in villages as elsewhere.    It is claimed that a cattle guard in a village would be a nuisance.    Practically, it might, in some instances, be a public inconvenience ; but it cannot be a public nuisance, if authorized, and indeed required, to be maintained by public authority.    These guards are not on the road or street, but beyond it on the private property of the railroad company.

The judge directed a verdict for the plaintiff, subject to the opinion of the Supreme Court, at general term.    As there was a motion for a nonsuit, which was denied, and an exception taken, I was inclined, originally, to the conclusion that there had been a mistrial, but, upon reflection, am of a different opinion.    It will be seen by looking into the case, that there was no controversy as to the facts, which were principally admitted.    It was a mere question of law, upon undisputed

facts, whether the railroad company was bound to maintain a cattle guard at the crossing on the east line of the Town Line road; and for the want of which the plaintiff's horse came upon its track, and was killed. The only ground upon which the plaintiff claimed to recover, was that the defendants were thus bound. If they were not, for the reason the crossing was of a street in a village, to which the statute did not apply, it was conceded there could be no recovery.

The judgment of the Supreme Court should be affirmed.

All the rest of the judges were for affirmance, but restricted their judgment to the case of cattle guards to be constructed within the limits of the railroad at the places where it crosses a street, being of the opinion that the statutes do not contemplate that, where a railroad running along a street is crossed by another street, passage in the latter is to be impeded by cattle guards running longitudinally along the railroad and across the street.

Judgment affirmed.