57b 589
8ap393

## BURCHFIELD vs. THE NORTHERN CENTRAL RAILWAY COMPANY.

The defendant was running a railroad belonging to another corporation, and using it for the ordinary purposes of a railroad, for its own benefit, under and by virtue of a written agreement with the owners, and for a period of time only fixed by the terms of a lease made to another corporation, and assigned to the defendant, who agreed to pay the rent reserved in said lease. *Held* that the defendant was a *lessee* of such road, within the meaning and intent of the general railroad act of 1850, and the act of 1864, amending the same and extending its provisions to the *lessees* of any railroad. And that as such lessee, it was liable for the value of a cow killed by its engine upon the track, in consequence of the defendant's neglect to maintain fences and cattle-guards as required by the statute.

The term *lessees*, in the statute, is to have such a construction as was intended by the legislature, to meet the then known and existing condition of things; to meet the case of parties using a road, as the substitute for the owners, and exercising the rights of owners, under some right or permission, for a consideration to be paid to the owners.

THIS was an appeal from a judgment of the county court of Schuyler county. The action was for killing the plaintiff's cow, by the defendants, upon the track of a railway. The action was commenced in a justice's court, and from the judgment there entered, there was an appeal to the county court, where there was a verdict for the plaintiff. A motion was made for a new trial and denied, and from the judgment entered on the verdict an appeal to this court was taken.

*M. M. Mead,* for the plaintiff.

*J. McGuire,* for the defendants.

*By the Court,* POTTER, J. The defendants are a corporation organized under the laws of the State of Pennsylvania. The railroad on which the injury happened was the road of a, corporation called the "Erie Railway Company." The defendants were using the said railroad under a contract as to the terms and considerations named therein for its use.

The main question to be decided, in this case, arises upon an objection taken on the motion to nonsuit the plaintiff, on the ground that the defendant was not the *owner* or *lessee* of the road in question, and that no negligence being shown, it was not liable for the injury sustained by the plaintiff.

The portion of the road, in question, was the " Chemung Branch" of the Erie Railway Company. There was no actual negligence proved against the defendants which, at common law, would create a liability for the injury complained of. The liability, if any, arises from the statutes. And the construction to be given to these statutes must determine this case.

The defendants were running a road which they had permission from the owner to use, and the plaintiff's cow was wrongfully upon the track of the road, and was killed by reason thereof; and it is claimed that by the terms of the contract of the *defendants* with the Erie Railway Company, the owners of the road, the defendants were neither the *owners* or *lessees* of the road, and therefore are not brought within the provisions of the statutes that create the liability for such accidents.

The first statute relied upon is that of 1850—a general statute—the 44th section of which requires every railroad company to erect and maintain fences on the sides of their road, of a certain height and strength, with openings, or gates, or bars therein, and farm crossings, on the road, for the use of the proprietors of the lands adjoining such railroad; and also to construct and maintain cattle-guards at all road crossings, suitable and sufficient to prevent cattle and animals from getting on to the railroad. Until such fences and cattle-guards shall be duly made, and maintained, " the *corporation* and its agents shall be liable for all damages which shall be done by their agents or engines to cattle or animals thereon." Under this act it was held, in *Parker* v. *Rensselaer and Saratoga Railroad Co.,*

(16 *Barb.* 318,) that the defendants, not being the *owners* of the road, but being merely running their cars upon the road of the Schenectady and Saratoga Railroad Company, who were the owners, were not liable; that the duty to erect and maintain fences was confined, by construction of this statute, to the proprietors or owners of the road. Assuming this to be a sound construction, it was, to say the least, a very strict construction, of a remedial statute. But it is not quite in the spirit or views of construction given by the Court of Appeals, in *Tracy* v. *The Troy and Boston Railroad Co.,* (38 *N. Y. Rep.* 437.) They say, "the passage of this act being induced by public considerations, and its purpose being to protect the traveling public, and the owners of domestic animals along the line of their road, it should receive a liberal construction to effectuate the benign purpose of its framers. A rigid and literal reading would, in many cases, defeat the very object of the statute, and would exemplify the maxim that the letter killeth, while the spirit keepeth alive. Every statute ought to be expounded not according to the letter, but according to the meaning," &c., &c. I am satisfied that this is a sounder rule, especially when applied to a remedial statute induced by public considerations. Whether by reason of the decision in the case of *Parker* v. *Rensselaer and Saratoga Railroad Co.,* (*supra,*) or of the fact that various railroad companies became themselves insolvent, and went into the hands of receivers, or trustees who ran them, or took them on lease, or from other causes, the remedy given as above against the owners would result in a failure of the object intended to be secured by the act of 1850, certain it is, the legislature of 1864, for some reason, and doubtless on like public considerations, by an express provision, extended the provisions of this statute so as to create a like liability against the *lessees* of any railroad, including not only other railroad companies

who may be such lessees, but any person or persons who may be such lessee or lessees.   (*Laws of* 1864, *p.* 1335, § 2.)

This limits our examination to the only real question in the case, viz: Was the defendant a *lessee* of this road, within the meaning and intent of these statutes? The defendants were running this road, and using it for the ordinary purposes of a railroad, for their own benefit, under and by virtue of a written agreement with the owners, and for a period of time only fixed by the terms of a lease made to another corporation, and assigned to them, the defendants; which lease, so assigned, is not produced by the defendants in evidence; but by the agreement which was produced and proved, the defendants agree to pay the rent provided for in said lease so thereby assigned to them. There is some obscurity in the evidence produced, as to what part of the Erie Railway the said assigned lease covers; but this obscurity it was the duty of the defendants to remove. They were in possession of the railroad upon which the injury happened; they proved it to belong to another corporation, and that they were using it under a written permission, license or lease. They claimed that by the terms of their contract it did not bring them within the terms of the statute, to make them lessees. It was undisputed that they killed the plaintiff's cow by the running of their engine drawing a train of cars; that they were operating the road under their written contract; that there was a neglect to maintain fences and cattle-guards as the statute requires. They were legally liable, if they are lessees. The term *lessees*, in this statute, is to have such construction as was intended by the legislature, to meet the then known and existing conditions of things; to meet the case of the parties using a road, as the substitute for the owners, exercising the rights of owners, under some right or permission, for a consideration to be paid to the owners. It would result in a technical evasion of the spirit and intent of this benign

statute, if a private agreement could be made between the owner and the user or occupant of a railroad, and could be put into such a form as to escape being called a lease, and thus private parties, between themselves, could defeat the object of a statute enacted from public considerations and for public protection. Courts will not permit such injustice, by mere technicality. Indeed, so far as we are permitted to know of this agreement between the defendants and the Erie Railway Company, it was really strictly and technically a lease; they, the defendants, agreeing to pay rent upon the lease assigned to them; and though the agreement restricts the use of the road, and also permits others to use it in part, it is equally a lease of the use, to the extent granted. It is, at all events, a lease so far as public and individual rights are concerned.

The judgment should be affirmed.

[THIRD DEPARTMENT, GENERAL TERM, at Plattsburgh, July 5, 1870. *Miller*, P. J., and *Potter* and *Parker*, Justices.]