# THIRD DEPARTMENT.

## GENERAL TERM, SEPTEMBER, 1873.

McGRATH v. THE NEW YORK CENTRAL AND HUDSON RIVER RAIL-
ROAD CO., appellant.

*Negligence — railway crossing street — conflict of testimony — train running
at improper speed — absence of flagman, when not negligence.*

At the trial of an action for injuries caused by a collision of plaintiff's team
with a train of cars run by defendant at a street crossing, witnesses who
were present at the accident testified that they did not hear the bell of the
locomotive ring. Defendant's witnesses swore positively that it was rung.
*Held,* that the jury were justified in finding that the bell was not rung.

*Held,* also, that the question whether the train was running at an improper rate
of speed was one for the jury to consider, although the rate of speed allowed
in the streets by the city ordinance was not exceeded.

The train was running over a road not owned by defendant. At the crossing
in question the company who owned the road usually kept a flagman, but
there was no flagman there at the time of the accident. *Held,* that it was
not negligence on the part of the defendant to run their train across the
street when a flagman was not there.

APPEAL from a judgment in favor of plaintiff upon the verdict of
a jury and from an order denying a new trial. The facts sufficiently
appear in the opinion.

*M. Hale,* for appellant.

*A. J. Parker,* for respondent.

PARKER, J. This action is brought to recover damages for per-
sonal injuries sustained by the plaintiff, occasioned, as is alleged, by
defendant's negligence.

On the 13th day of March, 1871, the plaintiff was driving two
horses, attached to a lumber wagon, loaded with boards, up Colonie

street in the city of Albany, across the tracks of the Rensselaer and Saratoga Railroad Company, when he was struck by a train of cars of defendant, which was backing up from the south, on said road, and was injured.

The action came on for trial at the Albany circuit in December, 1872, and resulted in a verdict for the plaintiff for $1,000. At the close of the plaintiff's evidence, and also at the close of the trial, defendant's counsel moved for a nonsuit, which was denied. A motion for a new trial was made by defendant upon the minutes of the court and denied.

From the order denying such motion, and from the judgment entered on the verdict, the defendant brings this appeal.

The case, upon the whole evidence, is not one for a nonsuit, or for a new trial upon the ground of lack of sufficient evidence of plaintiff's negligence, or of proof of contributory negligence upon the part of the plaintiff.

The evidence in regard to the ringing of the bell must be deemed conflicting, although plaintiff's witnesses speak only of the fact of their not hearing it, and defendant's testify positively to the fact that it was rung. If one, in a position to hear the bell, if rung, testifies that he did not hear it, that is some evidence that it was not rung; and although others may swear positively that it was rung, it would not be safe and proper for the court to overrule the finding of the jury that it was not rung, though the affirmative evidence to the contrary may be very much the strongest. The appearance of witnesses and their manner of testifying has much to do with the worth of their testimony — so that it is altogether proper, in all cases of conflict in the testimony of witnesses on the stand, to suffer the jury to settle the relative weight and value of their testimony.

Again, the question whether the defendant was running at an improper rate of speed was one which it was proper for the jury to consider, although the city ordinance allowed a speed of eight miles an hour, which defendant did not on this occasion exceed, still whether running at that rate of speed at this time was, under all the circumstances, negligent or not, was an open question. The city ordinance is not the rule of defendant's liability; nor does a compliance with the statutory rule, requiring the ringing of the bell, satisfy the entire obligation of the defendant. "The greater the circumstances of difficulty in avoiding the train, in hearing its signals, in seeing its approach, however they arise, the greater caution

is devolved upon the railroad company in making that approach."
WOODRUFF, J., in *Grippen* v. *N. Y. C. R. R. Co.*, 40 N. Y. 45.

If the defendant was running eight miles an hour, as under the
evidence it may have been, the law does not determine that such
speed was consistent with a due regard to the safety of persons about
to cross the street, in view of the buildings near the track which hid
approaching trains from sight and obstructed the hearing of the bell
which was being rung — not upon the part of the train nearest the
crossing, but at the end most distant from the crossing.

The whole question of defendant's negligence was therefore prop-
erly left to the jury, and we cannot say that they have erred in their
findings so egregiously as to warrant the setting aside of their verdict.

So, in regard to the question of contributory negligence, we have
the testimony of plaintiff that he was constantly upon the look-out
for trains as he approached and entered upon the track, and couldn't
see or hear its approach, until it suddenly emerged upon him, when
on the track. Nor is the proof in regard to the distances down the
track which could be seen by a person, at different distances from
the track in the street, so contradictory of the fact that plaintiff
could not have seen the approaching train in sufficient season to
avoid it, as to be conclusive upon this question. Giving defendant
all the advantage which he can claim from this evidence, it still
appears that plaintiff could not have seen the train until his horses
were stepping upon the track on which the train was coming, and
that it was then but a few seconds from the place where plaintiff
was. It would scarcely do in such a case for the court to rule
peremptorily that plaintiff was negligent in not avoiding the col-
lision which ensued.

It was shown upon the trial that the Rensselaer and Saratoga
Railroad Company had always kept a flagman at the crossing, but
on this occasion he was absent.

The plaintiff's counsel insisted that these facts might be taken into
account against the defendant upon the question of defendant's
negligence, and that view was sustained by the court in its charge
to the jury.

There is no claim that it was incumbent upon the defendant to
keep a flagman at this crossing, but the court held and charged that
as defendant ran upon the track of the Rensselaer and Saratoga
Company, it ran in view of the practice and regulations of that com-
pany in having a flagman, and that it was for the jury to say whether

defendant was guilty of negligence in running when no flagman was there.

I am inclined to think this view of defendant's duty and liability erroneous. The question upon which the fact of the customary presence of a flagman at the crossing, and his absence on this occasion, are made to bear, is the negligence of defendant. It is admitted that no obligation rested upon defendant to have a flagman at the crossing — none rested upon the Rensselaer and Saratoga Company even, except in so far as it had, in the language of Judge WOODRUFF in *Ernst* v. *H. R. R. R. Co.*, 39 N. Y. 67, "made a law for itself," by its custom of keeping one there. It is said defendant was bound, when running upon this road, by its usages and practice, that is, as to this question, to see to it that a flagman was there.

A great difficulty in maintaining this proposition in this case is, that so far as appears defendant had no notice that a flagman was customarily stationed there. Defendant, ignorant of such custom, can scarcely be chargeable with negligence for running its train over this crossing in the absence of the flagman.

The charge of the court allows the jury to impute negligence to defendant absolutely, from the fact of the customary presence of the flagman, and his absence at this time, without reference to defendant's knowledge or ignorance of such facts or either of them. Manifestly intending to put defendant in the same category as to liability as the Rensselaer and Saratoga Company would have been in like circumstances. This, I think, was clearly erroneous.

But if defendant's knowledge of the custom of the Rensselaer and Saratoga Company be assumed and admitted, still I think the law which that company had made for itself does not apply to defendant. It has incurred no obligation to the public by any acts of its own beneficial to the public, which good faith compels it to continue, or discontinue only upon notice, as the other company has, on which, I take it, the duty of such other company in the premises is founded.

There is no foundation for a similar duty on the part of the defendant. There is no such identity of the two companies, from the circumstance of both running upon the same track, as binds one by the acts of the other. I think the principle of the case of *Parker* v. *Rensselaer and Saratoga R. R. Co.*, 16 Barb. 315, applicable, so far as it holds defendant in that case, who was running upon the track of another road, not chargeable for an injury happening on account of the omission of the other road to build cattle-guards, a

duty imposed upon it by law. The defendant there, when it assumed to run upon the track of the other company, did not thereby come under the obligations resting upon that road, arising from its omission to build cattle-guards — and here, I think the defendant is equally free from the obligations of the Rensselaer and Saratoga Company, arising from its omission to have a flagman at this crossing.

If I am right in the view of the case, which I take upon this question, it is unnecessary to discuss the remaining exceptions to the charge.

The judgment and order must be reversed, and a new trial granted, with costs to abide the event.

BOARDMAN and POTTER, JJ., concurred.

*Judgment and order reversed and new trial granted.*