MARGARET TRACY, Administratrix of Dennis Tracy, Appellant, *v.* THE TROY AND BOSTON RAILROAD COMPANY, Respondent.

NEGLIGENCE.  RAILROAD CROSSINGS.  LIABILITY OF RAILROAD COMPANIES, OR THEIR LESSEES, TO MAINTAIN FENCES AND CATTLE-GUARDS AT CROSSINGS.  CONSTRUCTION OF STATUTES.  TROY AND BOSTON RAILROAD COMPANY.  Section forty-four of the general railroad act of 1850, as amended by section eight of the act of April 15, 1854 (Laws of 1850, ch. 140, § 44; Laws of 1854, ch. 282, § 8), imposes the duty upon railroad companies to fence both sides of their track, and they are liable for damages done to cattle, so long as such fences are not made and kept in good order. (*Shepherd* v. *The Buffalo, New York and Erie R. R. Co.*, 35 N. Y. 641.)

The fact, that a railroad crossing is at or near a depot, and that to construct a cattle-guard there would inconvenience the company, will not excuse them from complying with the positive requirement of the statute, requiring such protection to be provided. (*Bradley* v. *The Buffalo, New York and Erie R. R. Co.*, 34 N. Y. 427.)

This action was for damages for killing a cow through the alleged negligence of the defendant.  The injury complained of was caused by an engine of the defendant, while running, not upon its own track or road, but upon that of the Troy Union Railroad company, a corporation that embraced the directors of the Troy and Boston Railroad company, and also of other companies, who alone, by the charter of the Troy Union Railroad company, and a contract therewith, were authorized to operate the road of the latter.  The defense to the action was, that the Troy and Boston Railroad company were not liable for injuries caused by running their engines upon the track of the Troy Union Railroad company, without erecting or maintaining the fences or cattle-guards required by statute. Negligence generally was also denied.  *Held*, that the defendant was essentially an owner and operator of the road, and, within the spirit and intent of the statute in regard to fences, was liable for the injury complained of.

The lessee of a railroad, while operating it, is liable if the fences are not maintained. (*Clement* v. *Canfield*, 28 Verm. 302.)

An act, induced by public considerations, the purpose of which is to protect the traveling public, and the owners of domestic animals, along the line of a railroad, should receive a liberal construction to effectuate the benign purpose of its framers; and every statute should be expounded, not according to the letter, but according to the meaning.

THIS action is brought to recover damages for killing a cow, through negligence on the part of the defendant.  The

plaintiff recovered judgment for the value of the cow in the justice's court, but on the trial upon appeal to the Rensselaer County Court, was nonsuited, and from the judgment upon such nonsuit, now appeals to this court.

Under the general allegation of negligence, the plaintiff claims that the defendant is liable, by reason of its negligence to make or maintain fences or cattle-guards at and near the place of collision, as required by the general railroad act. (3 Stat. at Large, 635, § 44; id. amended, 643, § 8.) In consequence of which negligence the plaintiff's cow strayed from the adjacent lot of plaintiff on to the track, and was run against by a locomotive owned and run by defendant; also, that the defendant is liable, by reason of negligence, apart from this liability under the statute, but on this latter point no evidence, independent of the act of running over the plaintiff's cow, seems to have been given.

It is conceded, that the injuries complained of were caused by an engine owned and run by defendant. It was not claimed on the motion for nonsuit, that the plaintiff was in any degree negligent. It is in undisputed evidence, that the railroad was not fenced at the place of collision which adjoins the plaintiff's premises, excepting that one-half of plaintiff's premises was fenced by himself. There are no cattle-guards at the street-crossing below the place of collision, and never have been any.

It also appears, that some four years before the killing of the cow the plaintiff called defendant's attention to the want of fencing, and requested them to have one constructed, but they omitted to do so. The character of the ground makes it probable that the cow could only have passed on the track directly from the plaintiff's premises, where she was usually kept, or from the street-crossing below. The railroad at the place of collision passes over land exclusively used for the purpose of a track, and the map and explanatory testimony show, that neither fences or cattle-guards at or near that place could in any way obstruct any highway or interfere with public travel or convenience. The place of collision is

on the line of what is known as "The Troy Union railroad," and defendant, therefore, claims that it (defendant) is not liable for injuries caused by its running engines at this point without erecting or maintaining the fences or cattle-guards required by the statute.    Defendant also denys negligence generally.

The Troy Union Railroad company is a corporation of an especial nature.    It is not a railroad company of the usual character, nor was it organized for the customary purposes of railroad corporations.    It is incorporated under a special act (chap. 255, Laws of 1851), and the peculiar and limited nature of its powers are expressed in that act, and are exhibited in the contract introduced by defendant on the trial.    It was organized solely and exclusively for the purpose of constructing a railroad through the city of Troy, for the use and benefit of the railroad companies running trains to and from said city.    This is the extent of its powers. (Act of 1851, "Contract," §§ 9, 14.)    It neither owns nor runs any engines or other rolling stock, nor ever has owned or run any.    It has no right to operate the railroad, or use its track for the usual purpose of railroad companies, viz., the running of engines and cars. (Act of 1851.)    It is not organized for profit, and it pays no dividend.    It is supported wholly by assessments on the railroad companies, for whose benefit the road was constructed. ("Contract," §§ 3, 4.)    And with the exception of these annual assessments for paying current expenses, it owns no property of any kind or description whatever.    Its "passenger house and all other property, rights and franchise," both in possession and in reversion, belong to the different railroad companies which are entitled to use the road.    Its management consists of a board of directors chosen exclusively by these different railroad companies, owners, with the mayor of Troy, and the board must always be so constituted. ("Contract," § 18.)    And even in the discharge of its few powers (such as prescribing necessary police regulations), it acts merely as the agent of these other companies for their sole benefit, and by virtue of this "contract."

The defendant, on the other hand, is a corporation duly organized under the general railroad act, running its trains to and from the city of Troy.

By the organic act of the Union road, the defendant is forever entitled to use the road, and to exercise thereon, to the exclusion of the Union company, the right or privilege of running its engines and cars. (Act of 1851, "Contract," *passim.*)   The Union depot south of the place of collision is the defendant's terminus of travel; the track at the place of collision is claimed to be a mere continuation of defendant's line of road, and it alone uses the road at that point.

*Miles Beach*, for the appellant.

*O. P. Buel*, for the respondent.

Mason, J.   The decision of this case involves the construction to be given to section 44 of the general railroad act of 1850, as amended by section 8 of the act of April 15, 1854 (Laws 1850, ch. 140, § 44; Laws 1854, ch. 282, § 8).   This eighth section declares, "that every railroad corporation, whose line of road is open for use, shall, within three months after the passage of this act, and every railroad company formed, or to be formed, but whose lines are not now open for use, shall, before the lines of such railroad are opened, erect, and thereafter maintain, fences on the sides of their roads of the height and strength of a division fence as required by law, with openings or gates, or bars therein, at the farm crossings of railroads, for the use of the proprietors of the lands adjoining such railroads, and shall also construct, where the same has not been done, and hereafter maintain, cattle-guards, at all road crossings, suitable and sufficient to prevent cattle, horses, sheep and hogs, from getting on to such railroad;" and the section then declares, "that, so long as such fences and cattle-guards shall not be made, and when not in good repair, such railroad corporation and its agents shall be liable for damages which shall be done, by the agents or engines of such corporation, to any cattle, horses,

sheep, or hogs thereon; and when such fences and guards shall have been duly made, and shall be kept in good repair, such railroad corporation shall not be liable for any such damages, unless negligently or willfully done." (Laws 1854, pp. 611, 612, § 8.)    It was held in the case of *Brace* v. *The New York Central R. R. Co.* (27 N. Y. 269), that this statute, requiring railroad corporations to maintain cattle-guards at road crossings, applies as well to streets which are crossed by railroads in villages as to country highways.

The fact, that a railroad crossing is at or near a depot, and that to make such cattle-guard there would inconvenience the company, will not excuse them from complying with the positive requirement of the statute. (*Bradly* v. *The Buffalo, New York and Erie R. R. Co.*, 34 N. Y. 427.)

These statutes impose the duty upon railroad companies to fence both sides of their track, and are liable for damages done to cattle, so long as such fences are not made and kept in good order. (*Shepherd* v. *The Buffalo, New York and Erie R. R. Co.*, 35 N. Y. 641.)

The passage of this act being induced by public considerations, and its purpose being to protect the traveling public and the owners of domestic animals along the line of their road, it should receive a liberal construction to effectuate the benign purpose of its framers.    A rigid and literal reading would, in many cases, defeat the very object of the statute, and would exemplify the maxim, that "the letter killeth, while the spirit keepeth alive."    Every statute ought to be expounded, not according to the letter, but according to the meaning; "*qui haeret in litera haret in cortico.*" (Dwar. on Stat. 690.)    And the intention is to govern, although such construction may not, in all respects, agree with the letter of the statute. (Ploud, 205.)    The reason and object of a statute are a clue to its meaning (Dwar. on Stat. 695), and the spirit of the law, and the intentions of its makers are diligently to be sought after, and the letter must bend to these. (6 Bac. Abr. 384, 6th ed. Lond. 1807; 1 Kent's Com. 465; Smith's Com. on Stat. §§ 709, 710.)    The defendant in this case seeks to escape liability for the injury it has inflicted through the

letter of the statute.   The statute declares, "that every rail-road corporation shall erect and maintain fences on the sides of their road," etc., and it is claimed in the case before us, that the road at the place where the cow in question was killed is not their road, but the road of the Troy Union Railroad company, and consequently the defendant is not liable.

The case shows, that the defendant is a railroad corpora-tion, and helped to construct this Union Troy railroad, and have secured to them, in law, the right to use this railroad, and run their cars over it.   The Troy Union Railroad com-pany is a corporation of a peculiar character.   It was never organized to become a common carrier, or for the purpose of constructing a railroad for its own use.   It was organized solely and exclusively for the purpose of constructing a rail-road through the city of Troy, for the use and benefit of the railroad companies running their trains to and from the said city.   This really is the whole extent of its powers.

It neither owns nor runs any engines or cars.   In fact, it has no right to operate this railroad.   It is not organized for profit, and pays no dividends.   It is supported by assessments on those railroad companies for whose benefit the road was constructed.   Its passenger house and other property, and all its rights of property, if not its franchise, belong to these different railroad companies which are entitled to run and use the road.   Its management is confided to a board of directors, chosen exclusively by these different railroad com-panies with the mayor of Troy.   Having constructed the road, the principle object of creation was accomplished.   By the organic act, the defendant is forever entitled to use the road, and have the right and privilege of running its engines and cars thereon, to the exclusion of the Troy Union Rail-road company.   The case shows, that the track of this rail-road at the place of collision is a mere continuation of the defendant's line of road, and that it alone uses the road at that point.

Upon these facts, I cannot doubt but the defendant is within the spirit and intent of this statute in regard to fences liable for the injury complained of in this case.   The defend-

ant is essentially owner and operator of this road. The statute was designed to guard against the very mischief complained of against the defendant in this case: the operating of a railroad without the statute safeguard of having it fenced. Those four operative railroad corporations, for whose use this road was constructed, must all be held liable to respond to the obligations imposed by the general railroad act in regard to fencing. The Supreme Court of Vermont, in the case of *Clement* v. *Canfield* (28 Verm. 302), held, under a statute substantially like ours, that the lessee of a railroad, who was operating it, was liable if the fences were not maintained.

The judgment of the justice should be affirmed.

Judgment affirmed.