Wilson v. Poole.

———o———

## WILSON *v.* POOLE.

ABATEMENT.—*Practice.*—Where an answer in abatement is not verified by affidavit, it seems that it would be proper to refuse to hear an objection to it on that ground after the jury has been sworn to try the cause.

SAME.—*Amendment.—Reswearing Jury.*—Where a plea in abatement had been stricken out for want of verification by affidavit, after the jury had been sworn to try the cause, but before any further step had been taken;

*Held*, that it was too late for the defendant to ask leave to supply the verification.

*Held*, also, that it was not necessary to reswear the jury to try the remaining issues.

SAME.—*Pleading.—Evidence.—Action to Quiet Title.*—In an action to quiet title to real estate, matter in abatement cannot be given in evidence without having been specially pleaded.

CONSTRUCTION OF WRITTEN INSTRUMENT.—*Evidence.*—A street contractor was permitted, over objection, to testify that his written bid to grade a certain street for one dollar a foot, which was in evidence, meant that he thereby proposed to do the work for fifty cents per front foot of the property on each side of the street.

*Held*, that this was error; but as the proper legal construction of the writing was the same as the construction given by the witness, the error was harmless.

CITY.—*Street Improvement.—Precept.—Affidavit.*—A lot in a city was sold under a precept for the collection of an assessment for the improvement of a street by grading and graveling, issued upon an affidavit of the contractor stating that, *under the estimate* made by the city engineer, $83.84 was assessed against this lot, and that the owner, for the space of twenty days after the date of the estimate, had failed and refused, and still refused to pay the same, except the sum of sixty dollars, which he had paid. The contractor's bid for making the improvement was one dollar per foot, and at that price it was contracted and the work was done. The front line of said lot was eighty-two and one-half feet long.

Wilson *v.* Poole.

*Held,* that no appeal from the precept was necessary, in order to raise the question of the authority of the council to issue it; but that it was absolutely void, and the city treasurer could not, under it, pass title by a sale of the property.

APPEAL from the Fountain Circuit Court.

Suit by the appellee against the appellant, the complaint alleging that the appellee is the owner in fee simple of a certain lot in the city of Attica, and entitled to the possession thereof, a deed of conveyance of which, with warranty, from Alonzo Chandler and Elizabeth Chandler to the appellee, dated March 16th, 1868, is made an exhibit of the complaint; and that the appellant claims title in fee simple to said real estate, adverse to the appellee. Prayer, that the appellee's title be quieted.

The appellant answered in four paragraphs, first, the general denial; second, that the appellant is the owner of said lot in fee simple, and entitled to the possession thereof, and holds it by virtue of a deed of conveyance from the city of Attica, under a lien for street improvement that attached August 20th, 1866, a copy of which deed is filed with the answer; and the appellant prays that his title be quieted. No question arising under the third paragraph is discussed in the opinions. The fourth paragraph sets forth that there was another action pending in the same court between the same parties, involving the same issues. This paragraph was not sworn to. The appellee replied by the general denial. Trial by jury. After the jury had been sworn to try the cause, the fourth paragraph of the answer was stricken out on motion of the appellee, to which ruling the appellant excepted. The appellant then asked leave to supply the verification of the fourth paragraph, which the court refused, and the appellant excepted.

Verdict for the appellee. A motion for a new trial was overruled, and the appellant excepted. Judgment was rendered on the verdict.

FRAZER, J.—This case presents a number of questions of practice.

1. An answer in abatement was stricken out after the jury was sworn, because it was not verified by affidavit. Was this error?

The appellant relies on *Bradley* v. *The Bank*, 20 Ind. 528. That case only decides that *after* a trial it is too late to object that the answer was not verified. We are not aware of any reported case involving the precise point before us, and the industry of counsel has not discovered any. It may happen in the hurry of business in the lower courts (though it should not), that the verification is forgotten by the pleader, and its absence overlooked by his antagonist. The law has no inclination to favor dilatory pleadings, for they do not go to the merits of the case. But it would be trifling to allow a party to speculate upon the result of a verdict, and, after it is found against him, interpose the objection that the answer was not verified. But when no step has·been taken beyond swearing the jury, no great inconvenience can result, nor any injury to the opposite party, by allowing the objection to be made. He can at once interpose an application for leave to add the verification, and thus protect himself and save his answer. We are, however, of opinion that the better practice would be to refuse to hear the objection after the jury has been sworn; but inasmuch as the error, if any, was harmless, it is not available in this court.

2. After the answer in abatement had been stricken out, as above stated, the appellant asked leave to supply the verification, but was refused; and this is complained of. He was too late in this application, after the pleading had been stricken from the record. It was then out, and could not be brought back by an affidavit.

3. It is urged that there was error in not reswearing the jury after this pleading was stricken out. There is nothing in this. No single issue had been changed, and no new one had been formed. One issue, existing when the jury was sworn well and truly to try *all* the issues, had been stricken out, but the oath which had been taken embraced each of

those which remained. The point is without even the slightest technical reason to support it.

4. The witness Hanna was allowed to testify, over the appellant's objection, as to what was meant by his bid in writing. This was error; but it was harmless, for the reason that the writing itself very plainly meant just what the witness swore that he intended by it, and was not, under the law, susceptible of any other construction, as we think. See 3 Stats. (Davis), 99 sec. 69.

5. The appellee was allowed to state as a witness the price which he had actually paid for the lot. This was error; for the appellant had not introduced any evidence whatever which tended to raise any question upon the subject. The tendency of this item of evidence would be to elicit the sympathies of the jury in behalf of the appellee; and so, unless it affirmatively appears that a right result was, beyond question, reached by the verdict, this will reverse the judgment.

6. The precept upon which the lot was sold for the unpaid assessment was issued upon an affidavit of the contractor stating that the work was done according to contract, and that, *under the estimate* made by the city engineer, eighty-three dollars and eighty-four cents was assessed against this lot, and the owner, for the space of twenty days after the date of the estimate, had failed and refused, and still refused, to pay the same, except the sum of sixty dollars, which he had paid. The bid of the contractor for grading the street was one dollar per foot, and at that price it was contracted, and the work done. This would of course impose an assessment of only fifty cents per front foot upon the property upon each side of the street. The front of this lot was only eighty-two and one-half feet, and the sum for which it was liable could only be forty-one dollars and twenty-five cents, all of which, and nearly twenty dollars more, had been paid when the precept issued, as appeared by the affidavit. All this information was before the council when the precept was ordered, and by law they and the contractor as well must

be held to have known that nothing remained unpaid against this lot. The affidavit of the contractor carefully avoided endorsing the estimate of the engineer as having been "duly made," that is, correctly made upon the basis of the contract, as the law requires. See 3 Stats. (Davis), 102. Without such an affidavit as the statute directs, the council had no jurisdiction to issue the precept. It issues without notice to the owner of the property, and the rule in like cases is, that there must be a strict compliance with the statute in order to bind the property. The doctrine applicable to sales for taxes must govern in cases of this kind. But it is argued that an appeal from the precept is provided for by statute, and that having failed to appeal, the owner of the property is forever prohibited from making any question as to the authority to issue the precept. This argument would possess greater force in a case where the precept had been issued under such circumstances as the law requires to exist in order to warrant its issue. The case, however, is one in which, under the circumstances, it issued without any authority whatever. It was therefore not voidable merely, but void, and no appeal was necessary to get rid of it. Being void, it had no more virtue or force than the blank paper upon which it was written; and the treasurer could not, under it, pass title by a sale of the property. Causes concerning the validity of tax titles under laws requiring the previous judgment of a court, of which the reports are full (we cite only *Thatcher* v. *Powell,* 6 Wheat. 119), maintain this proposition so uniformly, that it can hardly be deemed open for argument anywhere. It matters not that the lot-owner *may* interpose by appeal to arrest the proceedings. It is only by virtue of the statute and by a strict compliance with all its material requirements that the officers of the city could have any power to alienate the property. This of itself shows that the result reached was unquestionably right.

Affirmed, with costs.

Wilson *v.* Poole.

ON PETITION FOR REHEARING.

WORDEN, J.—We are satisfied with the conclusion arrived at by the late court, that the judgment below should be affirmed, and, therefore, that the petition for rehearing should be overruled; but we are not quite satisfied that the same strictness should be applied to sales made for improvement of streets, &c., under the authority of municipal corporations, that is required in sales for taxes, as is intimated in the original opinion in this cause.

We think the sale made under the circumstances shown in the record, and stated in the original opinion, was a nullity; but we think that conclusion may be well maintained without resorting to the extreme strictness usually applied to tax sales.

A rehearing, however, is pressed more especially upon the ground that the court is supposed to have overlooked, or not fully considered, a question arising upon the introduction of evidence. The defendant below, on the trial, offered evidence tending to show that a prior action was pending between the same parties (they being reversed), involving the same cause. The evidence was excluded. There was no plea in abatement under which the evidence could have been given, and the question presented is, whether it could have been given under the general denial. The statute applicable to actions for the recovery of real estate and for quieting the title thereto provides, that "the answer of the defendant shall contain a denial of each material statement or allegation in the complaint; under which denial the defendant shall be permitted to give in evidence every defense to the action that he may have, either legal or equitable." 2 G. & H. 283.

If the words "every defence to the action, * * either legal or equitable" are to be construed as embracing matters of abatement, as well as matters in bar, then, of course, the court below erred in excluding the evidence. But we think the language employed does not embrace matters of

abatement. The following extract from Mr. Chitty will show the general signification of the word "defense" as applied to legal pleading: "After the statement of the appearance follows that of the *defense,* which has been defined to be the denial of the truth or validity of the complaint, and does not merely signify a justification. It is a *general* assertion that the plaintiff has no ground of action, and which assertion is afterwards extended and maintained in the body of the plea." 1 Chitty Plead. 428.. We think the word "defense" as used in the above statute includes every matter in bar of the action, whether of denial or of confession and avoidance, but not matter of abatement. The pendency of a prior action between the same parties for the same cause is no "defense" to a subsequent action, but it is merely a reason why the defendant in the subsequent action should *not be compelled to make his* "defense" therein.

This construction is not only right in itself, but it is necessary to preserve harmony in the practice in reference to pleading matters of abatement. It has been held that sec. 200, p. 706, R. S. 1843, requiring pleas in abatement to be sworn to without exception, is continued in force. *The Indianapolis, &c., R. W. Co.* v. *Summers,* 28 Ind. 521. No good reason occurs to us why matters in abatement of actions of this character should not be pleaded, and sworn to, as well as in other actions. We suppose the legislature intended, by the provision above quoted, to assimilate this class of actions to the old action of ejectment, in which the general issue was pleaded, and under which all legal matters in bar could be given in evidence, but not matters of abatement; enlarging the common law right of defense, however, by permitting equitable as well as legal defenses, to be thus given in evidence under the general denial.

The petition for rehearing is overruled.

*J. Buchanan,* for appellant.

*J. McCabe* and *M. M. Milford,* for appellee.