## THE UNION PACIFIC RAILWAY COMPANY v. C. M. DYCHE.

1. RAILROAD COMPANY, *When not Absolved from Liability.*  Where stock are killed by a railroad train, the company is not absolved from liability under ch. 94 of the Laws of 1874, by proof that the place of injury was within the territorial limits of an incorporated city, or even that it is within such portion of those limits as is regularly laid off into blocks and lots, surrounded by streets and alleys.

2. PAROL TESTIMONY, *When Incompetent.*  Where it appears from a plat offered in evidence, that a street in a city has been regularly laid out and dedicated to the uses of the public, parol testimony is not competent to prove that such street has been vacated.

3. FENCE; *Burden of Proof.*  In an action under said chapter 94, to recover of a railroad company for stock killed, if it appears from the plaintiff's testimony that the road was unfenced at the place of injury, the burden of proof is on the company to show that it was under no obligation to fence at such place, or that the night herd law was in operation, and that the animals were killed in the night-time.

4. VERDICT, *When Set Aside.*  Where in such an action the plaintiff's testimony simply shows that the animals were killed sometime between 6 o'clock P. M. and 8 o'clock of the next morning, and is absolutely silent as to the hour at which they were killed, and it is conceded that the night herd law was in force, and the testimony of the defendant from unimpeached witnesses shows that they were killed about the hour of midnight, which testimony is contradicted neither directly nor indirectly by any witness and is supported by every fact appearing in the case, a verdict for the plaintiff will be set aside as against the evidence, although it was coupled with a special finding that the jury did not know the hour at which the animals were injured.

*Error from Riley District Court.*

AT the December Term, 1881, of the district court, plaintiff *Dyche* had judgment for $95 and costs against the *Railway Company*, which brings the case here.  The opinion states the facts.

*J. P. Usher,* for plaintiff in error.

*Green & Hessin,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action in which the defendant in error, plaintiff below, recovered judgment against the rail-

way company for certain stock killed.   The action was brought under the law of 1874.   But two questions are presented, and they arise on these facts: The track of the railroad company runs through the city of Ogden and along Eleventh street, and on that street the animals were injured.   A plat of the city was offered in evidence, which shows that Eleventh street runs directly through the city, and is crossed by five streets at right angles.   The plaintiff testified that the injury did not take place where any of these streets crossed Eleventh street. He further testified that Eleventh street had been vacated for the railway.   This testimony was received without objection. There was no other evidence of any action of the city council or of any other authority vacating such street.   The night herd law was in force in Ogden township.   Plaintiff turned his stock loose, and sometime between 6 o'clock P. M., June 25, and 8 o'clock A. M., June 26, the animals were struck by the train of defendant, and injured.   The jury, in response to certain special questions, answered that they did not know whether the animals were injured in the night-time, or about what hour they were injured.   The district court charged the jury that the burden of proof was on the defendant to show that the animals were injured in the night-time.   Now upon these facts the railway company makes two questions : *First,* that it is under no obligations to fence at the place of injury, and therefore that the law of 1874 does not apply ; *second,* that the burden of proof is on the plaintiff to show that the animals were injured in the day-time, and when he was violating no law in permitting them to run at large ; and that in fact the testimony proves that they were injured in the night-time — the verdict of the jury declaring ignorance, to the contrary notwithstanding.

In reference to the first question, the company insists that it is under no obligations to fence its track within the limits of an incorporated city, or at least within that portion of such limits which is laid off into lots and blocks.   And again, that if it is under obligations to so fence anywhere within such limits, that it is not bound to fence where its

track runs along the public street, and that there was no competent evidence in this case that Eleventh street, where the injury took place, had ever been vacated. The first proposition of the railroad company we think is too broad. The act of 1874 is general in its terms, declares that the railroad company shall be liable to pay the owner for all stock injured or killed by its trains, with the single proviso that the act shall not apply to any company "whose road is inclosed with a good and lawful fence, to prevent such animal from being on such road." This language on its face requires the inclosing of the entire line of road, but construing this statute in connection with others, the courts have interpolated certain exceptions upon its general language, and have held that wherever superior obligations forbid a fence the act is inapplicable. (*Rld. Co. v. Jones*, 20 Kas. 527.) Wherever there is a public crossing the railroad company may not fence. So also where there are depot grounds, and generally wherever the necessities of its business or of those dealing with it require free access to its track, the obligation to fence does not exist; and there may be in cities, outside of its depot grounds and yards, and along its track, stores, warehouses, mills, factories, etc., whose business relations to the company are such that free access between them and the track is indispensable. But it is also true that the track may run through other portions of a city used simply for residences where access to the track is beneficial to no one, and in such places the obligation to fence may exist as fully as outside the limits of incorporated cities. See as authorities sustaining this, *Rld. Co. v. McConnell*, 26 Ohio St. 57; *Rld. Co. v. Lull*, 28 Mich. 510; *Rld. Co. v. Howell*, 38 Ind. 447; *Rld. Co. v. Owen*, 43 Ind. 405; *Rld. Co. v. Parkhurst*, 34 Ind. 501.

The other proposition of the railroad company we think is correct, and that there was no proper evidence before the jury from which they could find that Eleventh street had been vacated or was not yet an established highway. The plat of the city was in evidence, from which it appears that

*1. Railroad company, when not absolved from liability.*

2. Parol testi-
mony, when
incompetent.

this street had been regularly laid out and dedi-cated to the use of the public, and as long as it so remained, whether there was much or little travel upon it, whether used by the public for purposes of travel or not, the company had no right and was therefore under no obligations to fence. (*Meyer v. Rld. Co.*, 35 Mo. 352.) After a street has thus been dedicated by the filing of a plat or laid out by condemnation proceedings, it is vacated only by some affirmative action on the part of the city council or other public authority. Such action is evidenced by a record, and by that alone. But it may be said that this testimony was received without objection; no motion was made to strike it out, and the attention of the court was not directed in any special way to its insufficiency. Without stopping to inquire how much of force there is in these considerations, and simply remarking that the testimony is not the kind required to prove the vacating of streets, we pass to an examination of the other question.

The jury answered that they did not know whether the animals were injured in the night or in the day-time, and then, as the court instructed that the burden of proof was on the

3. Fence; burden
of proof.

railway company, they found against the company, because they held that it had not shown that the animals were injured in the night-time. We think the court's ruling as to the *onus probandi* was right. A party suing under the law of 1874 is only required in the first instance to make out a case within the terms of the statute, and then if there be any reason why the statute does not apply, it is incumbent on the railroad company to show it. If, when the plaintiff rests his case, it appears that the railroad company has not fenced its track, apparently it is liable, and if no further testimony were introduced, verdict and judgment would properly go against it. Thus, where a party sues for personal injuries, when he shows negligence on the part of the company he has made a *prima facie* case. If there is a claim of contributory negligence, such as to defeat his action, it is matter of defense, and for the company to prove. (*Railroad Co. v.*

*Pointer*, 14 Kas. 37.) So, that the night herd law is in force
at the place of injury is a matter for the railroad company to
show. In this case, when plaintiff rested, no testimony had
been offered in respect to the night herd law, and there was
no presumption that that law was in force; and unless the com-
pany had offered some evidence in respect to it, the case would
have probably gone to the jury as though it were not in force.
But if the company is called upon to prove that it applies to
the case at bar, can the plaintiff be required to prove more than
he alleges in his petition, and must he in that petition nega-
tive the operation of the night herd law, or if in operation,
its application to his case? In the case of *Railroad Co. v.
Pence*, 68 Ill. 524, it was held that it was sufficient if plaintiff
in his case negatived the exceptions named in the statute, and
that it was incumbent on the company to prove any other ex-
ceptions given by other statutes. It has also been frequently
held, that where the plaintiff shows that the railroad company
had not fenced its track at the place of injury, that the *onus
probandi* is on the company to show that it had no right
to fence at such place. (*Rld. Co. v. O'Connor*, 37 Ind. 95;
*Rld. Co. v. McClure*, 47 Ind. 317; *Rld. Co. v. Penry*, 48 Ind.
128.) Though the contrary rule seems to be laid down by
Mr. Justice Cole, in the opinion in *Comstock v. Rld. Co.*, 32
Iowa, 376. In Indiana, in a recent case, it was held that
"The general rule deducible from the authorities may be thus
stated: Whoever asserts a right dependent for its existence
upon a negative must establish the truth of the negative by a
preponderance of the evidence." (*Goodwin v. Smith*, 72 Ind.
113.) This case was cited approvingly by this court in the recent
case of *The State v. Kuhuke*, 26 Kas. 409, in which the ques-
tion was, whether the state, in a prosecution for selling liquor
without a license, was called upon to prove the non-existence
of the license; and upon that question, this court, by Mr.
Justice VALENTINE, said: "If the possession of the license is
a purely extrinsic defense, and the want of a license does not
constitute any ingredient of the offense charged, then we would
think it would devolve upon the defendant to prove the license;

but where the want of a license inheres in the offense itself, and where the offense cannot be committed except where the supposed offender has no license, then we think it devolves upon the state to allege and prove the want of the license."

The reasoning of that case applies here. The night herd law is not named in the statute. There need be in the petition no allegation as to its wants of operation or application. It is something whose operation and application will not be presumed and must be shown; and generally wherever a fact is beneficial to a party, it must be proved by him, or its existence may be ignored. We think therefore the court ruled correctly in respect to this matter.

But upon the testimony, coupled with the answers returned by the jury, we think it affirmatively appears that the animals were in fact injured in the night-time. It is clear that the animals were injured between 6 o'clock P. M., June 25th, and 8 o'clock A. M., June 26th, and so the jury found. The plaintiff's testimony is absolutely silent as to when during this period, and by what train, these animals were injured. The jury also found that the engineers who ran trains along there by daylight during this time were Hosp and Stevens, and the testimony supports this finding. The entire testimony also shows that the animals were killed by a train going east, and Stevens was the only engineer who in the day-time ran such a train. The animals were found on the south side of the track, and must have been thrown off on the right-hand side of the train going east. Both Hosp and Stevens testified that they did not strike any animal that morning, and the entire testimony shows that when running in the day-time an engineer will almost certainly know if the engine strikes an animal and throws it off on the right side of the train. Bohner, who ran an engine along the road there, saw an animal which had been struck lying on the south side of the track, and other witnesses testified to hearing the train going east whistle for stock near midnight. Three trains went east at or about midnight, the second of which was run by Bohner. So that the case stands about thus: The plaintiff's testimony is

absolutely silent as to whether the cattle were injured in the night-time or day-time. The defendant's testimony shows clearly that the animals were not injured in the day-time. The testimony thus offered by it was entirely uncontradicted, and it was not for the jury to disregard it, and say in the absence of any counter testimony that they did not know when the stock were injured. This is not a case of conflicting testimony. The only testimony offered — and there was an abundance of it — shows that the stock must have been killed in the night-time. The jury should have so found, and because they did not so find, the verdict was against the evidence, and cannot be sustained. The judgment of the district court will therefore be reversed, and the case remanded for a new trial.

4. Verdict, when set aside.

All the Justices concurring.