THE ATCHISON, TOPEKA & SANTE FÉ RAILROAD COMPANY V. CLAY SHAFT.

1. RAILROAD STOCK LAW; *Fences; Liability of Company.* The railroad stock law of 1874, (Comp. Laws of 1879, pp. 784, 785, ¶¶ 4915, 4919,) construed, and *held,* that generally a railroad company, in order to be absolved from liability for stock killed by it in the operation of its railroad, must have its railroad "*inclosed* with a good and lawful fence, to prevent such animal from being on such road."

2. FENCES; *Duty of Company.* A railroad company is not absolved from complying with the express terms of the statute requiring it to inclose its road with a good and lawful fence, except where some paramount interest of the public intervenes, or some paramount obligation or duty to the public rests upon the railroad company, rendering it improper for the company to fence its road.

3. ——— *Private Interest of Company.* No private interest or convenience or inconvenience on the part of a railroad company will alone be sufficient to absolve it from fencing its road, where the statute in express terms requires that the road shall be fenced.

4. ——— *Private Interest of Individual.* Nor will any private interest or convenience on the part of individuals be sufficient to absolve a railroad company from fencing its road.

5. RAILROAD *to be Inclosed; Cattle-Guards.* Building fences along the sides of a railroad is not alone sufficient. The railroad must be "*inclosed*" with fences or other barriers; and whenever, for that purpose, cattle-guards are necessary at the crossing of public highways, or other public places, cattle-guards must be put in.

6. ——— *Fencing Station Grounds.* The railroad company owned a strip of land 250 feet wide and 2,400 feet long, which it used for station grounds. The plaintiff owned a steer, which he permitted to run at large near the station grounds. This animal passed along the highway and upon the station grounds, and wandered along the same until it passed upon the company's right-of-way and upon the railroad track, where it was killed. Neither the railroad track, nor the right-of-way, nor the station grounds, was inclosed with a fence. A fence, however, extended along one end and a part of the two sides of the station grounds. The place where the animal was killed, though used as a part of the defendant's station grounds, was not necessary for such use. *Held,* That, assuming that land necessarily used for station grounds need not be fenced, still, as the place where the animal was killed was not necessary in the present case for the use of the railroad company as a part of its station grounds, the same should have been fenced.

7. ——— *Relief from Fencing; Adjacent Barriers.* Where a railroad company is for any reason relieved from fencing its road at some particular place or places, then it must construct fences or other barriers as near thereto as is reasonably practicable.

8. ——— And it devolves upon the railroad company to show that it is so relieved.

9. ——— The present plaintiff is not prevented from recovering by reason of contributory negligence.

*Error from Chase District Court.*

ACTION brought by *Clay Shaft* against *The Atchison, Topeka & Santa Fé Railroad Company,* to recover damages for the killing of a steer belonging to the plaintiff. The plaintiff alleged in his petition, among other things, that the steer in question, without fault on the part of the plaintiff, strayed in and upon the track and ground occupied by the railroad company at a point west of Crawford station, in the county of Chase, where such track ought to have been, but was not, inclosed with a good and lawful fence, and that the defendant, by its agents and servants, not regarding its duties in that respect, carelessly and negligently ran and managed its locomotive and cars, so that the same ran against and over the said steer, and wounded and killed the same. The plaintiff claimed $55 damages, and $30 as attorney's fees. The defendant denied generally, and also set up contributory negligence on the part of the plaintiff. The case was tried by the court without a jury, and the court made special findings of fact and conclusions of law as follows:

"At Crawford station, in Chase county, Kansas, the defendant owns a strip of land 250 feet wide and 2,400 feet long, which it uses as its station grounds at that point. At each end of this strip of ground there is a cattle-guard, over which the main track of defendant's road passes. These cattle-guards are connected on each side with fences running across the end of this strip of ground. Beyond each end of this strip of ground is the defendant's right-of-way, 100 feet wide, over which the main track of defendant's railroad passes as it leaves this strip of land. About 800 feet from the east end of this strip used as station grounds a public highway crosses this

strip of land, north and south, in an angling direction. Two hundred and seventy-five feet from the west end of this strip a switch leaves the main line and thence runs east (north of the main line) 1,400 feet, at which point it crosses the public highway and again joins the main track 600 feet east of the public highway. Six hundred feet from the east end of this strip, on the north of the switch and main track, the defendant has its stock-yards at said station, built upon this strip. Between the switch and main track is defendant's depot building at this station, which is about 400 feet west of the public highway crossing this strip. One hundred feet west of the depot building is the water-closet of the defendant at this station; 75 feet west from the water-closet is the water-tank; 600 feet west from the point where the public highway crosses the south line of this strip is defendant's well upon this strip, from which it gets its water to supply its water-tank. About 1,200 feet west from the point where the public highway crosses the south line of this strip is the section-house of defendant, in which its section-men live; the tool-house belonging to defendant at this station is on this strip north of the main line and about 100 feet east of the west end of this strip; this tool-house is where the section-men living in the section-house keep their tools, and to it they have to have constant access. The switch on this strip is daily used for switching purposes, and for trains to side-track upon. The only way in which grain is loaded at this station is by loading the same from wagons into a car; and when grain is loaded from a wagon into a car, the car is placed upon this switch, and frequently while grain is so being loaded such car has to be moved from point to point along a portion of this switch, to keep out of the way of trains switching and side-tracking at this point. There is considerable hay, corn and wheat loaded at this station from wagons into cars. From the point where the west line of the public highway crosses the north line of this switch, a lawful fence has been built by the defendant running west along the north line of this strip to the west end thereof, and across the west end in connection with the cattle-guard there, and thence east along the south line of said strip, around the section-house, for a distance of about 1,100 feet. Outside of this fence there is no fence of any kind around this strip of land; and immediately joining the south line of this strip from the east end of the fence thereon to the east end thereof is the village of Crawford, which has been platted; and one of the laid-out streets of said village runs parallel with and adjoining the south line of this

strip from the end of the fence on the south side to the east end of the same. The only way the public have the right to ingress and egress to and from the station building at this station is by entering the station grounds upon the public highway which crosses the same, or from the street in the village of Crawford, which adjoins and runs parallel with the south line of defendant's strip. The defendant is operating a railroad through Chase county, Kansas, and this station is upon such line. The animal described in plaintiff's petition was allowed by the plaintiff to run at large upon uninclosed land north of the station at Crawford; it got upon the station grounds by coming down the public highway to the point where it crosses this strip of land used as station grounds, and from there it wandered west upon the said strip of ground so used as station grounds to a point about 75 feet east of the west end of said strip of ground, being a point about 1,550 feet west of where the public highway crosses said strip, and about 200 feet west of the west end of the switch, and 1,200 feet west of the center of the depot building, although it could have crossed the station grounds and passed along on the south of the same to some point and then have entered upon such station grounds; and there, as this animal, with a number of others, was feeding south of the track; it became frightened by the noise of the approaching train, and jumped upon the track in front of such train, so close to the train that it was impossible to prevent the train from striking it, and it was there struck by the train and killed. Owing to the fence around the west end of this strip there was formed a pocket at the west end, which being open to the east to the public highway, and from the south to the end of the south fence made a sort of trap which tended to prevent animals getting therein from escaping from approaching trains. The defendant in so constructing its fence at the west end of this strip as to form this pocket, and leaving the access thereto as above stated, was negligent. Such negligence was the direct cause of the death of said animal. Said animal was of the value of $45. There could not be any fence placed across said strip of land at any point between the public highway and the station building which would prevent animals from getting from the highway to the station grounds, except the same be built across the track and switch by cattle-guards, and except there should be gates put therein for the ingress and egress of the public and the defendant's employés to and from said station-house. Cattle-guards cannot be placed across any railroad track upon which switching

has to be done with safety to the employés who have to do such switching. The part of this strip of land upon which the animal was killed was not necessary for the use of defendant as part of its station ground. From the point where the main track left this strip of ground at the west end to the point where the switch left the same east of the west end there could not have been any cattle-guards made across said track, with any safety to such employés of the defendant as would from time to time have to uncouple or couple cars on the main line west of the west end of the switch, preparatory to placing such cars or trains upon such switch from the west. Crawford station was a station on the defendant's road, used by it as a station for the public to get on and off its cars at, and to load freight on its cars and to take freight off from its cars. The switch there was used for standing cars upon which were to be loaded and unloaded for the public, as well as for passing trains."

As a conclusion of law upon the foregoing facts, the court found that "the defendant is liable to the plaintiff for the value of said animal as found, and that judgment be rendered for the same, and for costs of this action, against the defendant."

The defendant moved for judgment upon the foregoing findings of fact, which motion was overruled by the court, and judgment was then rendered in favor of the plaintiff and against the defendant for the sum of $45, damages, and costs of suit, taxed at $22.86. The defendant brings the case to this court.

*A. A. Hurd, C. N. Sterry,* and *Robert Dunlap,* for plaintiff in error; *Geo. W. McCrary,* general counsel.

*Young & Kelley,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Clay Shaft against the Atchison, Topeka & Santa Fé Railroad Company, in the district court of Chase county, to recover damages for the killing of a steer belonging to the plaintiff. The allegations of the plaintiff's petition were such that he might have

recovered either under chapter 94 of the statutes of 1874, because of a want of a legal fence inclosing the defendant's railroad, (Comp. Laws of 1879, pp. 784, 785, ¶¶ 4915 to 4919,) or under chapter 93 of the Laws of 1870, for negligently killing the plaintiff's animal, (Comp. Laws of 1879, p. 784, ¶ 4913, or under the rules of the common law for negligently killing the same.

It is admitted in the present case that the defendant killed the plaintiff's animal in the operation of its railroad, and that the defendant's railroad was not inclosed with a good and lawful fence, or any fence, where the animal was killed; and while the defendant claims that the railroad should not have been inclosed where the animal was killed, and that the defendant was not guilty of any negligence in killing the same, and that the plaintiff was guilty of contributory negligence in permitting his animal to run at large, the plaintiff on the other hand claims that the railroad should have been inclosed, and also that the defendant killed his animal not only through negligence, but through gross negligence, and that the plaintiff was without fault on his part.

Sections 1 and 5 of said statute of 1874 read as follows:

"SECTION 1. Every railway company or corporation in this state, and every assignee or lessee of such company or corporation, shall be liable to pay the owner the full value of each any [and] every animal killed, and all damages to each and every animal wounded by the engine or cars on such railway, or in any other manner whatever in operating such railway, irrespective of the fact as to whether such killing or wounding was caused by the negligence of such railway company or corporation, or the assignee or lessee thereof, or not."

"SEC. 5. This act shall not apply to any railway company or corporation, or the assignee or lessee thereof, whose road is inclosed with a good and lawful fence to prevent such animals from being on such road."

Section 1 of said statute of 1870 reads as follows:

"SECTION 1. That railroads in this state shall be liable for all damages done to person or property, when done in consequence of any neglect on the part of the railroad companies."

There is no *express* exception to, or limitation upon, or modification of, any of the provisions of the foregoing sections by any other statute, and none except such as is found in said § 5; and if there is any exception, limitation or modification of any of the foregoing sections, other than that contained in said § 5, it must be such only as arises by implication, or by judicial construction or interpretation. In other words, under chapter 94 of the statutes of 1874, and upon its face, a railroad company is liable in all cases for injuries done to animals in the operation of its railroad, *except* where the railroad is inclosed with a good and lawful fence; and *expressio unius est exclusio alterius*. And upon the face of chapter 93 of the Laws of 1870, a railroad company is liable for "any neglect" on its part which causes injury. The words "any neglect" have been construed to mean "ordinary negligence," and the language of the act does not overturn or destroy, or even disturb, any of the rules of the common law with regard to "contributory negligence." (*St. J. & D. C. Rld. Co. v. Grover*, 11 Kas. 302; *K. C. Ft. S. & G. Rld. Co. v. McHenry*, 24 id. 501.)

In the nature of things, however, there must be some limitations upon the terms of the language used in said chapter 94 of the Laws of 1874. It would be improper for a railroad company to inclose its road where the same crosses a public street or highway, for such a thing would do violence to other provisions of the statutes of the state. This is also true even where the place crossed is only a highway *de facto*. (*A. T. & S. F. Rld. Co. v. Griffis*, 28 Kas., 539; same case, 13 Am. & Eng. Rld. Cases, 532.)

It has also been held by some of the courts that even a railroad depot or station is of such a public character that it would be improper for a railroad company to fence its road at such place. (*Davis v. B. & M. R. Rld. Co.*, 26 Iowa, 549; *Durand v. C. & N. W. Rly. Co.*, 26 id. 559; *Smith v. C. R. I. & P. Rld. Co.*, 34 id. 506; *Cleveland v. C. & N. W. Rly. Co.*, 35 id. 220; *Latty v. B. C. R. & M. Rly. Co.*, 38 id. 250; *Kyser v. K. C. St. J. & C. B. Rld. Co.*, 56 id. 207; *G. & C. U. Rly. Co. v. Griffin*, 31 Ill. 303; *I. & St. L. Rld. Co. v. Christy*, 43 Ind. 143;

*Lloyd v. Pac. Rld. Co.*, 49 Mo. 199; *Swearingen v. M. K. &
T. Rld. Co.*, 64 id. 73; *Robertson v. A. & P. Rld. Co.*, 64 id.
412; *F. & P. M. Rly. Co. v. Lull*, 28 Mich. 510; *C. & G. T.
Rly. Co. v. Campbell*, 47 id. 265; same case, 7 Am. & Eng. Rld.
Cases, 545.) And there are other cases which go even beyond
this, and hold that a railroad company is not required to fence
its road where it adjoins mills or machine-shops, or some other
kind of property belonging to the railroad company or to pri-
vate individuals. ( 8 Ind. 402; 35 id. 515; 50 id. 349; 20
id. 231; 45 id. 496; 82 id. 593.) The great weight of au-
thority however is, that railroad companies are not absolved
from complying with the express terms of the statutes requir-
ing them to inclose their roads with good and lawful fences,
except where some paramount interest of the public intervenes,
or some paramount obligation or duty to the public rests upon
the railroad companies rendering it improper for them to fence
their roads. ( *Tracy v. T. & B. Rld. Co.*, 38 N. Y. 433; *Brad-
ley v. B. N. Y. & E. Rld. Co.*, 34 id. 427; *C. & P. Rld. Co. v.
McConnell*, 26 Ohio St. 57; *Rld. Co. v. Newbrander*, 40 id.
15; same case, 11 Am. & Eng. Rld. Cases, 480; *Whitewater
Valley Rly. Co. v. Quick*, 30 Ind. 385; *C. C. C. & I. Rly. Co.
v. Crossley*, 36 id. 370; *T. W. & W. Rly. Co. v. Chapin*, 66 Ill.
504; *Latty v. B. C. R. & M. Rly. Co.*, 38 Iowa, 250; *Mund-
henk v. C. I. Rld. Co.*, [Sup. Ct. of Iowa,] 11 Am. & Eng.
Rld. Cases, 463; *Flint & P. M. Rld. Co. v. Lull*, 28 Mich. 510.)

No private interest or convenience or inconvenience on the
part of a railroad company will alone be sufficient to absolve
it from fencing its road, where the statute in express terms re-
quires that the road shall be fenced. (*Tracy v. T. & B. Rld. Co.*,
38 N. Y. 433; *Comstock v. Des M. Val. Rld. Co.*, 32 Iowa,
376; *Morris v. St. L. K. C. & N. Rld. Co.*, 58 Mo. 78; *Bellefon-
taine Rly. Co. v. Reed*, 33 Ind. 476; *P. C. & St. L. Rly. Co. v.
Laufman*, 78 id. 319; *Mundhenk v. C. I. Rld. Co.*, [Sup. Ct.
Iowa,] 11 Am. & Eng. Rld. Cases, 463.)

Nor will any private interest or convenience on the part of
individuals be sufficient to absolve a railroad company from
fencing its railroad in like cases. (*I. C. Rly. Co. v. Leamon*, 18

Ind. 173; *Indianapolis &c. Rld. Co. v. Thomas,* [Sup. Ct. of Indiana,] 11 Am. & Eng. Rld. Cases, 491; *P. & L. E. Rld. Co. v. Cunnington,* [Sup. Ct. of Ohio,] 13 Am. & Eng. Rld. Cases, 529; *P. P. & J. Rld. Co. v. Barton,* 80 Ill. 72; *McKinley v. C. R. I. & P. Rld. Co.,* 47 Iowa, 76; *Mackie v. C. Rld.,* 54 id. 540.)

The cases last cited have reference to the crossings of railroads over private roads. There are numerous cases holding that railroad companies are required to fence their roads in cities, towns, and villages, except where the railroads cross some public street, alley, or other public place, and where it would be improper to fence the roads, notwithstanding any inconvenience to the railroad companies, or to others. (*U. P. Rly. Co. v. Dyche,* 28 Kas. 200; same case, 1 Pac. Rep. 243; *Crawford v. N. Y. C. & H. R. Rld. Co.,* 25 N. Y. S. C. Rep. 108; *Brace v. N. Y. C. Rld. Co.,* 27 N. Y. 269; *Ells v. Pac. Rly. Co.,* 48 Mo. 231; *Iba v. H. & St. J. Rld. Co.,* 45 id. 469; *J. M. & I. Rld. Co. v. Parkhurst,* 34 Ind. 501; *T. W. & W. Rly. Co. v. Howell,* 38 id. 447; *I. P. & C. Rld. Co. v. Lindley,* 75 id. 427; *Wabash Rly. Co. v. Forshee,* 77 id. 158; *P. C. & St. L. Rly. Co. v. Laufman,* 78 id. 319; *C. & P. Rld. Co. v. McConnell,* 26 Ohio St. 57.)

Under the statutes, railroads must be "inclosed." In the language of the statute, they must be "*inclosed* with a good and lawful fence, to *prevent such animals from being on such road.*" (Laws of 1874, ch. 94, § 5.) Building fences along the sides of the railroad is not alone sufficient. The railroads must be "*inclosed*" as aforesaid, with fences or other barriers; and whenever for that purpose cattle-guards are necessary at the crossings of public highways or other public places, cattle-guards must be put in. (*U. P. Rly. Co. v. Harris,* 28 Kas. 206; *Mo. Pac. Rly. Co. v. Manson,* 31 id. 337; same case, 2 Pac. Rep. 800; *Mo. Pac. Rly. Co. v. Morrow,* 32 Kas. 217; same case, 4 Pac. Rep. 87; *N. A. & S. Rld. Co. v. Pace,* 13 Ind. 411; *P. C. & St. L. Rly. Co. v. Eby,* 55 id. 567; *Bradley v. B. N. Y. & E. Rld. Co.,* 34 N. Y. 427; *Tracy v. T. & B. Rld. Co.,* 38 id. 433; *P. P. & J. Rld. Co. v. Barton,* 80 Ill. 72; *Flint & P. M. Rly. Co. v. Lull,* 28 Mich. 511; *Cleveland &c. Rld. Co.*

34—33 KAS.

*v. Newbrander*, 40 Ohio St. 15; same case, 11 Am. & Eng. Rld. Cases, 480; *Mundhenk v. C. I. Rld. Co.*, [Sup. Ct. of Iowa,] 11 Am. & Eng. Rld. Cases, 463.)

"The fact that a railroad-crossing is at or near a depot, and that to construct a cattle-guard there would inconvenience the company, will not excuse it from complying with the positive requirement of the statute requiring such protection to be provided." (*Tracy v. T. & B. Rld. Co.*, 38 N. Y. 433; *Bradley v. B. N. Y. & E. Rld. Co.*, 34 id. 427.)

"Where stock is killed on a railroad switch at a point where it is unnecessary to keep the road open in order to transact business, the company will be liable without proof of negligence." (*Morris v. St. L. K. C. & N. Rld. Co.*, 58 Mo. 78; *Comstock v. DesM. Val. Rld. Co.*, 32 Iowa, 376.)

Upon all the foregoing propositions, valuable notes may be found in the American and English Railroad Cases, especially in 7 Am. & Eng. Rld. Cases, 577, *et seq.;* 11 Am. & Eng. Rld. Cases, 496, *et seq.;* and 13 Am. & Eng. Rld. Cases, 533.

In the case of the *P. C. & St. L. Rly. Co. v. Laufman*, 78 Ind., 320, it is said that —

"The statutory rule is, that railroad companies shall be liable for injuries done by their locomotives or cars to animals at places where the roads might be, but are not, fenced; and it is not the province of the courts to create exceptions to the rule, or to interfere with legislative policy."

This meets with our approval. But whenever it appears from the general course of legislation that the public have a paramount interest in having particular portions of the railroads of the state unfenced, we shall hold that the statutes requiring railroads to be fenced have no application to such places, and that the railroad companies are not required to fence their roads at such places. This exception to the general rule requiring railroad companies to fence their roads, will apply to all public highways, including streets and alleys in cities, towns and villages; and, for the purposes of this case, we shall assume that it will also apply to all railroad depots and stations where the public generally do business with the railroad com-

panies; and yet the railroads themselves, or in other words the railroad tracks, might very well be fenced at the companies' depots and stations. All the railroad tracks might be located on one side of the depots or stations, and the public have access to such depots or stations from the other side — the depots or stations forming a part of the inclosure. This would prevent stock from getting on the railroad tracks.

This brings us to the question whether the defendant's railroad should have been fenced where the animal in the present case was killed. The court below upon the evidence found that —

"At Crawford station, in Chase county, Kansas, the defendant owns a strip of land 250 feet wide and 2,400 feet long, which is used as its station grounds at that point.  .  .  . That the part of this land upon which the animal was killed was not necessary for the use of defendant as part of its station grounds."

In the present case the plaintiff's animal passed from the public highway upon this tract or strip of land used for station purposes, and wandered along the strip until it passed upon the company's right-of-way and upon the railroad track, where it was killed; and neither the railroad track, nor the right-of-way, nor the strip of land, was inclosed with a fence. A fence, however, extended along one end and a part of the two sides of this strip of land, but this made the wrong of the railroad company in the present case greater—if it committed any wrong — for by reason thereof the animal could not escape from the passing train. Assuming, for the purposes of this case, that land necessarily used for station grounds need not be fenced, then the question arises, is it necessary for a railroad company to inclose a tract not necessary for the use of the railroad company as a part of its station grounds, but in fact so used? Under the circumstances of this case, we think we must answer this question in the affirmative. To say that railroad companies are not required to fence their roads in such cases, would be to create an exception to an express statutory requirement, and to create such exception without any good reason therefor. This does not come within the province of the courts. Courts may

say that where some other statute, or some paramount duty or obligation absolves railroad companies from fencing their roads, they need not do so; but where the statute expressly requires railroad companies to fence their roads, in order to exempt the companies from liability, and no other statute or paramount obligation or duty or any good reason exists to relieve them from so fencing, the courts cannot say that they need not fence; but if for any reason they are relieved from fencing their roads at some particular place or places, then they must construct fences or other barriers as near thereto as is reasonably practicable. (*Cleveland &c. Rld. Co. v. Newbrander*, 40 Ohio St. 15; same case, 11 Am. & Eng. Rld. Cases, 480; *Morris v. St. L. K. C. & N. Rld. Co.*, 58 Mo. 78; *Bradley v. B. N. Y. & E. Rld. Co.*, 34 N. Y. 427; *Tracy v. T. & B. Rld. Co.*, 38 id. 433; *Comstock v. D. M. V. Rld. Co.*, 32 Iowa, 376.) And if for any reason a railroad company is relieved from fencing its road at any particular place, it devolves upon the railroad company to show that it is so relieved. The burden of proof in all such cases rests upon the railroad company. (*U. P. Rly. Co. v. Dyche*, 28 Kas. 200; same case, 11 Am. & Eng. Rld. Cases, 427; same case, 1 Pac. Rep. 243; *I. P. & C. Rld. Co. v. Lindley*, 75 Ind. 426; same case, 11 Am. & Eng. Rld. Cases, 495; *R. R. I. & St. L. Rld. Co. v. Lynch*, 67 Ill. 149; *Flint & P. M. Rly. Co. v. Lull*, 28 Mich. 510.)

In some states there are express exceptions by statute, as in Illinois, for instance, railroad companies are not required to fence their roads at the crossings of public roads and highways, or within the limits of cities and incorporated towns and villages; and in some states increased damages by the way of penalties are imposed for failures to fence, as in Iowa, the party recovering because of a want of a sufficient fence is entitled to recover double damages. Of course decisions rendered upon such statutes have no application in this state, where no exceptions are found in the statutes, and no damages or penalties are imposed except the value of the animal killed, or damages for the animals wounded, and an attorney-fee.

The plaintiff in this case permitted his animal to run at

large, but by so doing we do not think that he was guilty of such contributory negligence as will prevent his recovery. Numerous cases might be cited, but we think it is necessary to cite only a few of them, as follows: *Flint & P. M. Rly. Co. v. Lull*, 28 Mich. 511; *Ewing v. C. & A. Rld. Co.*, 72 Ill. 25; *Bellefontaine Rly. Co. v. Reed*, 33 Ind. 447; *Cressly v. N. Rld. Corp.*, [Sup. Ct. of N. H.,] 15 Am. & Eng. Rld. Cases, 540, and note, p. 544.

The judgment of the court below will be affirmed.

All the Justices concurring.