### THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. AMAVA GREEN.

#### No. 127.

1. RAILROAD — *Duty to Fence.* Railroad companies are not absolved from complying with the express terms of the statute requiring them to inclose their roads with a good fence except where some paramount interest of the public intervenes, or some paramount obligation or duty to the public rests upon them, rendering it improper for them to fence. (*A. T. & S. F. Rld. Co. v. Shaft*, 33 Kan. 521.)

2. ———— *Duty to Fence.* And if for any reason they are relieved from fencing their roads at some particular place or places, they must construct fences or other barriers as near thereto as is reasonably practicable.

MEMORANDUM.—Error from Wabaunsee district court; WILLIAM THOMSON, judge. Action by Amava

Green against The Chicago, Rock Island & Pacific Railway Company for killing a horse. Judgment for plaintiff. D fendant brings the case to this court. Affirmed. The opinion herein, filed September 9, 1896, states the material facts.

*M. A. Low*, *W. F. Evans*, and *J. C. Dolman*, for plaintiff in error.

*Sprague & Tracy*, for defendant in error.

The opinion of the court was delivered by

GILKESON, P. J. : This action was brought by Amava Green against the Chicago, Rock Island & Pacific Railway Company in the district court of Wabaunsee county to recover damages for the killing of a horse belonging to the plaintiff. The allegations of the petition are, that

"The killing was the result of, and caused by, negligence of the defendant in the operation of its railroad, in that the agents and employees of the defendant, at the time of the killing, did not exercise due care and diligence in the operation of its engine and cars, and that the defendant did not exercise due care and diligence in having its track inclosed with a good and lawful fence, as required by statute."

The first allegation of negligence seems to have been abandoned, and the right to recover was based entirely on the alleged failure of the defendant to fence its track. The evidence establishes the following facts : That the horse in question was killed by the agents and employees of the defendant below at the time stated in the petition at a point about 800 feet west of the west switch limits of said railroad at Wabaunsee, Wabaunsee county ; that the plaintiff was the owner of the horse ; that a fair market value of the

horse was $75; that a reasonable attorney's fee was $40; that a proper demand was made upon the defendant railroad company for the value of the horse before this action was commenced; that, at the place where the horse was upon the right of way of the railroad company, and for a quarter of a mile east and west of that point, there were no fences, cattle-guards or other barriers to prevent stock from going on to said railroad inclosing the right of way; that just before the horse was killed it came down the bank and on to the right of way from a point about 15 rods from the railway track west of a certain tool-house of the company, which is located on the right of way about a quarter of a mile northwest of the depot, and that the horse was struck and killed at a point west of the public crossing.

There are but two alleged errors assigned upon which the plaintiff in error relies for a reversal of the judgment: (1) "That the court erred in refusing to instruct the jury at the close of the testimony to return a verdict for the plaintiff in error." (2) "In overruling a motion for a new trial." Paragraph 1252, General Statutes of 1889, being section 1 of chapter 94, Laws of 1874, provides:

" Every railway company or corporation in this state, and every assignee or lessee of such company or corporation, shall be liable to pay the owner the full value of each any [and] every animal killed, and all damages to each and every animal wounded by the engine or cars on such railway, or in any other manner whatever in operating such railway, irrespective of the fact as to whether such killing or wounding was caused by the negligence of such railway company or corporation, or the assignee or lessee thereof, or not."

Section 5 of the same act provides:

"That this act shall not apply to any railway com-

pany or corporation, or the assignee or lessee thereof, whose railroad is inclosed with a good and lawful fence to prevent such animals from being on said railroad.

Our supreme court, passing upon this statute, has said:

"There is no express exception to or limitation upon or modification of any of the provisions of the foregoing sections by any other statute, none except such as is found in said section 5; and if there is any exception, limitation or modification of any of the foregoing sections, other than that contained in section 5, it must be such only as arises by implication or by judicial construction or interpretation. In other words, under chapter 94 of the statutes of 1874, and upon its face, a railway company is liable in all cases for injuries done to animals by the operation of its road, except where the railroad is inclosed with a good and lawful fence; and *expressio unius est exclusio alterius*. . . . In the nature of things, however, there must be some limitation upon the terms of the language used in said chapter 94 of the Laws of 1874. It would be improper for a railroad company to inclose its road where the same crosses a public street or highway, for such a thing would do violence to other provisions of the statutes of the state. . . . It is also held by some courts that even a railroad depot or station is of such a public character that it would be improper for a railroad company to fence its road at such place, . . . and there are other cases which go even beyond this. . . . The great weight of authority, however, is that railroad companies are not absolved from complying with the express terms of the statute requiring them to inclose their roads with good and lawful fences except where some paramount interest of the public intervenes, or some paramount obligation or duty to the public rests upon the railroad companies, rendering it improper for them to fence their roads . . . No private interest or convenience or inconvenience on the part of a railroad com-

pany will alone be sufficient to absolve it from fencing its road where the statute in express terms requires that the road shall be fenced." (*A. T. & S. F. Rld. Co. v. Shaft*, 33 Kan. 521.)

The language of the statute is very plain: "Must be *inclosed* with a good and lawful fence to *prevent such animals from being on said railroad.*" Building fences along the side of the track is not alone sufficient, nor would the construction of cattle-guards at each end of the switch limits comply with the plain statutory requirements; the railroad must be *inclosed*; and it is not the province of the courts to create exceptions to the rule or interfere with the legislative policy. Courts may and have said that

"where some-other statute or some paramount duty or obligation absolves railroad companies from fencing their roads, they need not do so; but where the statute expressly requires railroad companies to fence their roads in order to exempt the companies from liability, and no other statute or obligation or duty or any good reason exists to relieve them from so fencing, the *courts cannot say that they need not fence*; but if from any reason they are relieved from fencing their roads at some particular place or places, then they must construct fences or other barriers as near thereto as is reasonably practicable." (*A. T. & S. F. Rld. Co. v. Shaft*, 33 Kan. 521.)

We think the exceptions to the general rule requiring railroad companies to fence their roads have been clearly and fully pointed out by the supreme court of this state in the cases of *A. T. & S. F. Rld. Co. v. Shaft*, supra, and *Prickett v. A. T. & S. F. Rld. Co.*, 33 id. 748. And if, from any reason, in this case the company was relieved from fencing its road at any particular place, it devolved upon the company to show it; the burden of proof in all such cases rests upon the company.

There was no attempt on the part of the company to show that its road was fenced at the place of the accident, or at any place. There was some testimony offered to show that to maintain *cattle-guards* within 1,000 feet of the switch limits would endanger the lives and limbs of its employees. But the verdict and findings of the jury are against the company upon this proposition and conclude this court. And conceding, for the purpose of this case, this to be true, would the company be relieved from fencing its road at the place of the accident? We think not. It is not shown that the land, or place of the accident, was necessary for the use of the company as a part of its station grounds; yet it might be said from the testimony that it was so used; but would that relieve the company from the statutory duty of fencing? Our supreme court has answered this question in the negative, and in *A. T. & S. F. Rld. Co. v. Shaft*, supra, it is said:

"Assuming for the purposes of this case that land necessarily used for station grounds need not be fenced, then the question arises, is it necessary for a railroad company to inclose a tract not necessary for the use of the railroad company as a part of its station grounds, *but in fact so used?* Under the circumstances of this case, we think we must answer this question in the affirmative. To say that railroad companies are not required to fence their roads in such cases would be to create an exception . . . without any good reason therefor."

We have failed to discover any reversible error in the record. The judgment of the district court will be affirmed.

All the Judges concurring.