## A. T. & Santa Fé Railroad Co. v. Jackson Jones, *et al.*

1. Railroad Stock Law of 1874; *Injuries from Operating Road.* Plaintiffs' mare got onto the defendant's track at a place where it ought to have been but was not fenced. Frightened by an approaching train, she fled along the track until she reached a tie bridge. Here she either jumped forward or was thrown forward by the engine onto the bridge, and her legs falling between the ties, she was fatally injured. *Held,* That the company was liable under chapter 94 of the laws of 1874.

2. ———— Under that statute no actual collision between the engine and the animal injured, is essential to liability. It is enough if the injury occurs in the operating of the railroad, and as a direct result therefrom.

3. ———— *Fence; Statute Construed.* The proviso in the fifth section of the act implies not merely the lack of a fence, but also the lack of one where no superior obligation forbids a fence, and also the lack of one which might have prevented the injury.

*Error from Atchison District Court.*

JONES and *A. Cushman* brought their action to recover the value of a mare owned by them, alleging that such animal had been killed by the moving train of cars of the defendant company. All necessary facts appear in the subjoined opinion. *Jones* and *Cushman* had judgment, at June Term 1877, for $110 and costs, and the *Railroad Company* brings the case here.

*Everest & Waggener,* for plaintiff in error.

*Mills & Wells,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an action under the stock-killing law of 1874; and the substantial question is, whether the facts in the case establish a liability under that statute. The undisputed facts are, that the railroad company's track runs through the land of plaintiff, and is unfenced; that on said land it crosses a bridge of some forty to sixty feet in length, and that said bridge is a tie bridge, with ties several inches apart; that a mare belonging to plaintiffs was on the track when the train approached, and, frightened thereby, commenced running along the track, followed by the train; that when she reached the bridge she either attempted to jump forward, or was struck by the locomotive and thrown forward, onto the bridge, and her legs falling between the ties, she receive such injuries as caused her death. A good deal of testimony was directed to the point whether the locomotive actually touched the animal, or was stopped before reaching the bridge, and the injuries resulted from the animal's efforts at escape. And the contention of the learned counsel for the railroad company is, that there must be an actual collision between the locomotive,

or cars, and the animal, before any liability arises under that

*1. Railroad stock law.* statute. The statute imposes liability for every animal killed or wounded "by the engine or cars on such railway, or in any other manner whatever in operating such railway," with the proviso that the act shall not apply to any company "whose road is inclosed with a good and lawful fence to prevent such animals from being on such road." And we think the statute clearly covers a case like the present. The lack of fence furnished the opportunity for the injury. A fence would have prevented the accident.

*Fence; statute construed.* And the proviso in the statute is a sort of negative pregnant. Not only must there be the lack of a fence, but also the lack of a fence which would have prevented. Suppose for instance, this mare had been feeding in a neighboring field, and, frightened by a passing train, had fled, and in her flight, without ever passing onto defendant's road, had received injury, no liability could have been enforced under the statute. So also, if the injury took place at a public crossing, at which (and at which alone) the animal passed onto the track, or if she were being carried as freight on the company's cars. In all these cases, the lack of a fence would either have no possible bearing upon the injury, or else such lack of fence is compelled by the superior rights of the traveling public. The injury would have happened, except in the case of the public crossing, whether the road were fenced or not. The matter of fence in such cases forms no element in the transaction. So that it may be laid down as a general proposition, that wherever the question of fence sustains no relation to the injury, and wherever superior obligations forbid a fence, the act is inapplicable.

Again, the liability is not limited to cases where the animal is killed or wounded by the "engine or cars"—which might perhaps be construed as referring solely to actual collision—but extends to those cases where the animal is injured "in any other manner whatever in operating such railway." This last clause is very broad, and clearly covers a case like the present. Whether the engine struck the mare

or not, the injury resulted directly from the operating of the railway. Of course, the mere fact that she was injured on the track, would not be conclusive. An injury might happen from the act of strangers, or the wanton acts of employés of the road, outside the scope of their employment. If a brakeman, seeing a mare on the track, had drawn his revolver and shot her in mere wantonness, the company would not be liable. Such act might be done by one *while* operating the railway, but not *in* operating it. It is like any other wanton and willful act of employés outside the scope of their employment, casting no liability on any one but themselves. But where the injury occurs in the actual operating of the railway, and as the direct result of such operating, then the statute applies. Here the company was running one of its trains. An animal is on the track, permitted to come on through the lack of a fence along the track at a place where it ought to be fenced. The approaching train frightens it, and it flees along the track to avoid the danger, and in that flight either falls or is thrown by the engine into the open spaces of a tie bridge, and is injured. Clearly, the train acting upon the animal's sense of fear, and the open space of the bridge, are the direct causes of the injury. It results from and occurs in the operating of the railroad.

We think therefore that the company was properly held responsible, and the judgment will be affirmed.

VALENTINE, J., concurring.

HORTON, C. J., not sitting, having been of counsel in the case.