The opinion of the court was delivered by
Brewer, J.:
This was an action under chapter 94 of the Laws of 1874, to recover for the value of a span of horses run over and killed by a freight train belonging to defendant. The action was commenced before a justice of the peace, and judgment rendered in favor of the plaintiff, and by the defendant appealed to the district court. Here the case was again tried by a jury; verdict and judgment were in favor of the plaintiff, and the railroad company alleges error. In a general way, the facts may be stated to be, that the horses, while being driven along a public road, broke loose from the buggy to which they were attached, ran off, and upon the railroad track, and then along the track for a considerable distance, until they were caught in an open bridge, where they were struck by the train and killed. At the place where the animals were killed the road was unfenced. There is no testimony in the case in reference to cattle-guards at *324 the crossing or elsewhere. It is not perfectly clear from the testimony, whether the place at which the animals entered upon the track was a public crossing or not. No one saw them go on. The lane in which they broke loose terminated some little distance from the track, and whether they kept along the public road until they reached the track, or deflected from the road after leaving the lane and before entering upon the track, is, at least, a question under the testimony. Plaintiff’s counsel say that there was no evidence that the horses went on at a public crossing, but the plaintiff himself testified: “The place where horses got on railroad track is considered a public road, and that is what I swore to in the statement that I made out and sent in to the company, or something to that effect. I made the statement after I had examined the tracks. It was the public highway crossing.” The day was rainy, the ground was wet, and several witnesses testified that they followed the tracks of the horses along the railroad to the place where they entered it, and their testimony would seem to indicate that the horses had left the public road some little distance before they entered upon the railroad track. The district court seemed to think that it was immaterial where the horses got on, provided only the road was unfenced at the place where they were struck and killed, and so refused all instructions referring to the question of where they first entered upon the railroad track. It may be remarked here, that from the meager statement of facts, it is not probable that there was any negligence in the handling of the horses at the time they broke loose from the buggy, or in the actual management of the train which injured the horses. At any rate, no question of negligence was submitted to the jury, and the liability was sought and enforced under the.stringent provisions of the stock law of 1874. Under that law, we think it is a matter of vital importance whether the place at which the stock first gets upon the road is a public crossing or other place at which a fence is impossible. The language of the statute, section 5, is, “That the act shall not apply to any railway company *325 whose road is inclosed with a good and lawful fence to prevent such animals from being on such road.” This plainly implies as a condition of recovery, not merely the lack of a fence, but the lack of a fence at such place and under such circumstances as might have prevented the injury. In the case of the Railroad Co. v. Jones, 20 Kas. 529, we said: “That it may be laid down as a general proposition, that wherever the question of fence sustains no relation to the injury, and wherever superior obligations forbid a fence, the act is inapplicable.” The same distinction was intimated in the case of Hopkins v. Rld. Co., 18 Kas. 464, and in the case of Rld. Co. v. Wood, 24 Kas. 626; Rld. Co. v. Neville, 25 Kas. 634. Now if the horses got upon the railroad track at a public crossing, they got on at a place at which the'railroad company was not at liberty to place a fence. The law is not so inconsistent as to forbid a railroad company to build a fence, and then mulct it in damages for failure to build one; so that it is clear that, if the injury had happened at the public crossing, the act would be inapplicable, and the railroad company not liable except in case of actual negligence. The same rule holds good where the animals got upon the track at a public crossing and then ran along the line of the track to the place of injury; for, after the animals had once gone upon the track, and were there without the fault of the railroad company, the presence of a fence along the line of the road will in no manner tend to prevent the animals from being on the track. On the contrary, so far as it has any bearing, the moment "the animals started along the track, a fence would tend to keep them on rather than off from it. So that it may be laid down as a general rule that, where stock enter upon a railroad track at a public crossing or other place where by law the railroad company cannot fence, and then, without fault of the railroad company, stray along the track and are injured, the company is not liable, although at the immediate place of injury the company could have fenced and yet has not.
The decisions of the supreme court .of Indiana, from which state this statute of ours was taken, sustain this exposition of *326 the statute. See the following cases, from that state and others: Rld. Co. v. Saman, 29 Ind. 40; Cecil v. Rld. Co, 47 Mo. 246; Bennett v. Rld. Co., 19 Wis. 145; Rld. Co. v. Northland, 30 Ill. 451; Sherman & Redfield on Neg. (2d ed.), p. 537, § 462, and .cases cited in note.
The judgment of the district court will therefore be reversed, and the case remanded with instructions to grant a new trial.
All the Justices concurring.