JOHN HYATT, RESPONDENT, *v.* THE NEW YORK, LAKE
ERIE AND WESTERN RAILROAD COMPANY,
APPELLANT

*Railroads — when excused from fencing at depots and yards — what evidence presents
a question of law for the court — Laws of 1854, chap. 282, sec. 8.*

A colt was at pasture in a field on the south side of the Alleghany river, which
was at that place 280 feet wide and not fordable. Upon the north side of the
river was the track of a railroad. The colt escaped from its pasture, went down
the river half a mile to a ford, reached the north bank of the river, and finally
came to a platform used by the railroad for loading its cars. The colt passed
around the end of the platform, at a distance from it of eight or ten feet,
through an opening required to be left unfenced for the convenience of ship-
pers, reached the tracks, went down them a distance of 500 feet to a bridge,
and was found dead on the bridge.

Along the tracks, for this distance of 500 feet in length and about one hundred in
breadth, there was no fence upon the river side, the space between the track and
the river being used for storing logs.

The particular space over which the colt passed in getting upon the track was
necessary for the approach of teams to the loading platform.

In an action brought by the owner of the colt against the company to recover its
value, upon the ground that the company was required, by section 8 of chap-
ter 282 of the Laws of 1854, to maintain a fence at the place in question:

*Held*, that, from the necessities of business, many places adjacent to railways, such
as stations and shipping yards, were not subject to the statutory requirements
relative to fences.

That as the particular place over which the colt reached the track was necessary
for the passage of teams loading and unloading at the platform, the company
was not bound to maintain a fence there.

That as the facts were undisputed, the question whether a fence should have
been maintained at this place was one of law for the court, and that it was error
to have submitted that question to the jury.

APPEAL by the defendant, The New York, Lake Erie and West-
ern Railroad Company, from a judgment of the Supreme Court
entered in the office of the clerk of the county of Cattaraugus, on
the 9th day of October, 1888, upon a verdict for the plaintiff for
$219.34, after a trial at the Cattaraugus circuit before the court
and a jury. Also from an order of said court entered in said
clerk's office on the 13th day of January, 1892, denying the defend-
ant's motion for a new trial made upon a case and exceptions; and
also from a judgment of said court entered in said clerk's office on
the 14th day of January, 1892, denying said motion for a new trial.

*George F. Brownell,* for the appellant.

*Ansley & Davie,* for the respondent.

MACOMBER, J. :

This action was brought under section 8 of chapter 282 of the Laws of 1854, which makes it the duty of every railroad company to erect and maintain fences on the sides of its roads, of the height and strength of a division fence; and further provides, that so long as the fences shall not be so erected and kept in good repair, the railroad corporation and its agents are made liable for damages, which may be done by the engines, or agents of the corporation, to any cattle, horses, sheep or hogs, upon the railroad. But the statute also provides that no corporation shall be required to fence the sides of its roads, except when such fence is necessary to prevent such animals from getting on the tracks, from the lands adjoining the same.

This action was brought in the year 1883, for the value of a colt found dead in a bridge crossing a creek, which was spanned by the defendant's railroad, about five hundred feet east of the railway station of the defendant at Great Valley, in Cattaraugus County. The allegation of the complaint was, that the colt had passed over and upon the railroad track of the defendant for want of a cattle-guard at a roadway crossing, just east of the railway station, and through the omission of the defendant to erect a proper fence along its tracks on the south side thereof, easterly of such roadway.

The point is made by the learned counsel for the appellant that the only charge against the defendant in the complaint, was the omission to erect cattle-guards upon this highway. On inspection of that pleading, however, it will be seen that while the language of it is somewhat ambiguous, yet it is susceptible of the construction which the learned justice at the trial placed upon it. There is, therefore, in our judgment, no sufficient ground stated for the reversal of the judgment and order for want of a sufficient pleading, although the colt, it is shown, passed upon the railway track, not upon the highway, but easterly thereof, as hereinafter stated.

The defendant's railway at Great Valley station runs nearly parallel to the north bank of the Alleghany river, at a distance therefrom varying from one hundred and eighty feet, at the bridge

where the colt was found, to one hundred feet, measured at the railway station. This colt, with three horses owned by the plaintiff, was pasturing on the south side of the river, and was so separated from the lands immediately adjacent to the railway by the width of the river, which is shown to be at that point 280 feet. There existed a saw-mill between the river and the station, around the southerly end of which the roadway above mentioned passed. Between the saw-mill and the main track of the railway there was a long platform for loading lumber, which, according to the map in evidence, is something over three hundred feet in length, and which came, at the eastern end thereof, within about fifty feet of this roadway. To the east of the roadway and of the saw-mill there was a mill office, so-called. Between this mill office and the railway, and on the east side of the roadway, was a loading platform which was used for all shipping purposes, except for the loading of lumber, which was done on the platform on the west side of the roadway. The space between the roadway to the east, for a distance of about five hundred feet, it was shown by several witnesses, was occupied as a sort of a mill-yard for the storage of saw-logs. The plaintiff himself testified that the soil there was rotten; that it was a mill-yard, with chips and saw-dust, coal and cinders, and such like all along the south side of the platform. This colt and the three horses, being pastured on the south side of the Alleghany river, broke from their pasture and wandered to the west for about a half a mile and then crossed the river at a fording place and came upon the lands in the vicinity of the saw-mill, on the north side of the river, and thence traveled north-easterly, past the mill office and immediately to the east of the loading platform, a distance of about one hundred feet from the roadway. They then passed upon the first track of the defendant, which was used as a switch track for the purpose of bringing cars loaded with lumber from the platform for loading lumber connected with the saw-mill, and from that point wandered to the east, apparently grazing, and came near to this railroad bridge spanning the creek, which empties into the river, where three of them turned off from the track, while the one that was killed was either hit and thrown by an engine of the defendant and lodged between the beams of this bridge, or voluntarily, without being hit, made a plunge into the bridge where it was found dead in the morning,

after the escape from the pasture on the south side of the river. This bridge is 500 feet east of the railway station. The lumber-switch track runs east of the station about two hundred and fifty feet. There is another switch on the north side of the main track, on the north of the railway station, called the back-switch, which comes into the main track at a distance of about seventy-five or eighty feet from the bridge.

The loading platform is about ninety or a hundred feet in length. The learned justice at the trial properly construed these statutes as not requiring the erection, by the defendant, of fences where the same were not necessary for the purpose of turning horses, cattle, sheep and hogs from the railway lands. But the question of the necessity of the erection of such a fence at the place where these horses were shown to have passed upon the railway lands was ubmitted to the jury.

From the necessity of business, many places adjacent to railways, such as railroad stations, shipping yards and the like, were evidently not contemplated by the legislature in the statute above mentioned, as was decided in the case of *Dolan* v. *N. D. and C. R. R. Co.* (120 N. Y., 571).

Where the facts are undisputed, the question of erecting a fence at such points is one of law, and we think it was incumbent upon the Circuit Court, in this instance, to decide it as a question of law, and not to have submitted it to the judgment of the jury as a question of fact. At the place where the horses passed upon the railway lands, which was within a space of five or ten feet from the east end of the loading platform, it is shown that the business of the corporation required that there should be this open space unfenced, for the purpose of serving the public conveniently in permitting the free access of shippers in approaching and departing from the loading platform with their teams. Between this platform and the railway bridge where this horse was found dead, a distance of about four hundred feet, the space, it was shown by entirely credible evidence, had been, before and after this accident, used by the company for the storage of saw-logs. Between this storage place and the pasture on the south side of the Alleghany river, from which the horses escaped, was what would apparently be considered an

insurmountable obstacle to the escape of the horses from the south side of the river.

There is evidence from which we may derive the conclusion that immediately opposite the place where these horses passed upon the railway company's lands the river was not fordable, for it is shown that the horses wandered to the west to a ford for about half a mile to a point where they escaped from the pasture  The jury, therefore, as it seems to us, had no lot or part in the decision of this question, for it was not for them to speculate as to whether, if a fence had been erected to the east of the loading platform, the horses might not have gone upon the defendant's land.

It is very doubtful whether or not, under this evidence, the colt was, in fact, struck by a locomotive. It is clear that, under this statute, if he was merely frightened by the approach of the engine, and plunged upon the bridge and there met his death without being struck by the locomotive, no recovery could be had in this action. The learned justice, in denying the motion for a new trial, admits that the animal, when found in the morning, showed no marks of a severe concussion with the locomotive, though there is a suggestion, not proof, in some of the testimony that his neck was broken.  The position of the colt, which was lengthwise of the bridge, would go far to show that he had not been thrown there by the pilot of the locomotive, but that he was so caught within the timbers from a voluntary plunge.  Although this is one view of the evidence, as it is spread upon the record before us, we should hardly, however, feel inclined to reverse the judgment upon this ground alone, for there was some evidence from which a deduction, not unreasonable, might be made, that, inasmuch as none of his tracks were found for a space of about eight or ten feet west of the bridge, the colt was carried that distance by the locomotive.  But for the reason that, under the evidence, there was no duty laid upon the defendant to fence the railway at the point upon which the horses passed upon its land, we think the judgment and order should be reversed and a new trial granted.

DWIGHT, P. J., and LEWIS, J., concurred.

Judgment and order appealed from reversed and a new trial granted, with costs to abide the event.