# Gillam v. Hogue, Appellant.

*Negligence—Damages—Fright of horse—Deterioration in value—Automobiles.*

The rule that there can be no recovery of damages from fright or other merely mental suffering unconnected with physical injury, does not apply to the deterioration in value of a horse, which has been frightened by the negligent operation of an automobile and rendered unfit thereby to be safely driven on the public roads.

548 .   ·          GILLAM *v.* HOGUE, Appellant.

Statement of Facts—Opinion of the Court.    [39 Pa. Superior Ct.

Argued Nov. 17, 1908.   Appeal, No. 70, Oct. T., 1908, by defendant, from judgment of C. P. Bucks Co., April T., 1907, No. 7, on verdict for plaintiff in case of Jonathan W. Gillam v. Robert M. Hogue.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.   Affirmed.

Trespass to recover damages for injuries to a horse.   Before STOUT, P. J.

The facts are stated in the opinion of the Superior Court. ·

Verdict and judgment for plaintiff for $245.   Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Wm. C. Ryan*, with him *Calvin S. Boyer*, for appellant.

*J. Hibbs Buckman*, with him *Henry A. James*, for appellee.

OPINION BY HEAD, J., July 14, 1909:

For the purposes of this appeal the verdict of the jury has established that the fright and runaway of the plaintiff's horse were caused by the negligent manner in which the defendant operated his automobile along the public highway.   The consequent injuries to the plaintiff's buggy and harness were comparatively trifling and, as to these, the appellant makes no further contention.   The chief claim advanced by the plaintiff, however, was that, before the occurrence complained of, he was the owner of a valuable horse.   This value, as he alleges, consisted largely in the facts that the animal was quiet, gentle and fearless of the sights and sounds incident to modern road travel, including those caused by the ordinary operation of motor vehicles.   As a result of the fright suffered by the horse, under the unusual conditions brought about by the defendant, it could no longer be safely driven upon the public roads and, as a consequence, its market value had depreciated to the extent shown by the testimony.   The learned trial court permitted the jury to consider this element of damages.   In so doing, the

appellant alleges the court fell into error, and upon this ground alone this appeal rests.

The appellant contends the facts, presented by the record before us, invite the application of the rule of law laid down in Fox v. Borkey, 126 Pa. 164; Ewing v. Ry. Co., 147 Pa. 40; Linn v. Duquesne Borough, 204 Pa. 551; and Huston v. Free-mansburg Boro., 212 Pa. 548. This rule, now so thoroughly established, is well and concisely stated in the opinion in the last-cited case, thus: "But we have had the case reargued before the full court, to settle finally the main question that there can be no recovery of damages from fright or other merely mental suffering unconnected with physical injury."

In no case, that has come to our knowledge, have our courts yet declared that this rule should be applied to a chattel, a thing having a recognized commercial value, the bases of which are as commonly known and as generally accepted as the fact of the value itself. In determining whether or not an established rule should be applied to a given case, an inquiry into the reason of the rule should be helpful because cessante ratione legis cessat et ipsa lex. In Linn v. Duquesne Borough, 204 Pa. 551, the reason of the rule is thus stated by Mr. Justice FELL: "But as the basis of an independent action, mental suffering presents no features by which a court or jury can determine either its existence or extent, and claims founded on it have generally been regarded as too uncertain and speculative for consideration."

The soundness as well as the necessity of the rule, in the case of human beings, is thus made apparent because the law makes no futile efforts to deal with things which, by their nature, are beyond the grasp of the instrumentalities through which it operates.

In a case like the present one, we are not called upon to deal, subjectively, with the effects of a fright on the animal frightened; but merely to ascertain, as a fact, whether or not, by reason of the existence of certain conditions, the market value of a chattel—the daily subject of barter and sale among men—has been lessened.

If it be a fact, born of the common observation of men in their everyday use of horses, that such an animal, when once sub-

jected to a fright so severe as to cause it to run away, loses a portion of the commercial value it previously possessed, such fact may be proven by evidence just as convincing and satisfactory, as that which establishes any other fact, the existence of which becomes the object of judicial investigation.

In 6 Thompson on Negligence (2d ed.), sec. 7247, the author states: "The owner of an animal may recover for an injury to his horse not physical in its nature—as where it was caused to run away by the injury—in which case the court held that the owner was entitled to recover for the vicious habit thus created; 'for common experience and common sense,' said the court, 'teach mankind that the market value of a horse is greatly lessened by its habit of taking fright at any object and running away.' It is therefore competent to show the value of the horse before and soon after the accident based on a change in his disposition." (Citing in support Oleson v. Brown, 41 Wis. 413; Montgomery St. Ry. Co. v. Hastings, 138 Ala. 432.)

The liability of a horse to take fright at a motor vehicle, even when carefully driven on the highway, is a matter of such common knowledge that our legislature has sought to minimize the probable results by regulating the manner in which those using such vehicles must operate them. The defendant would not therefore be in a position to contend that the fright and runaway of the plaintiff's horse were unforeseen or improbable consequences of his negligent conduct. This being true, he practically concedes that he must respond in damages for the partial destruction of the buggy and harness because, obviously, these results naturally followed the negligent act.

His sole contention is that although the plaintiff suffered an additional loss in the market value of his horse, a loss substantial and tangible, the extent of which and the compensatory damages for which, can be readily ascertained and measured, and a loss which, under the evidence, the jury could fairly ascribe to the negligent act, such loss is damnum absque injuria. To this conclusion we are unable to assent. The assignments of error must therefore be overruled.

Judgment affirmed.