MAX GONSENHAUSER, Respondent, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Fourth Department, July 9, 1959.

**484**

*Harris, Beach, Keating, Wilcox, Dale & Linowitz (Thomas M. Hamson* of counsel), for appellant.

*Cucci, Welch & Boehm (David O. Boehm* of counsel), for respondent.

HALPERN, J. This action was brought to recover damages for injuries alleged to have been sustained by the plaintiff's cows while they were on the defendant's right of way.

The negligence charged against the defendant was the failure to maintain in good condition, pursuant to section 52 of the Railroad Law, a railroad fence between the railroad right of way and the land of one Lovejoy, on which the plaintiff's cows were pastured. The evidence established that the railroad fence

was defective and that the defendant had timely notice of the defect.

In July, 1955, the plaintiff had 35 milk cows in the Lovejoy pasture. Many of the cows were pedigreed cows, registered by the Holstein-Friesian Association. In the early evening of July 18, 1955, the cows escaped from the pasture onto the defendant's right of way through the defective portion of the railroad fence. A train came along and struck and killed one of the cows. The rest of the cows stampeded in fright and suffered cuts, bruises and lacerations as a result of striking each other or as a result of falling or coming in contact with objects on the ground.

The plaintiff claimed that all 35 cows had been on the right of way at the time of the episode and had suffered injury but at a pretrial conference he agreed to limit his claim to 29 cows. In addition to the cow that was killed by the train, two others died within a few days. As a result of the injuries, the remaining cows were no longer usable as milk cows. Twenty-two cows were sold for beef at a considerable loss. The other cows could not even be sold for beef, either because of the extent of their injuries or because they had been given medicines which rendered them unfit for human consumption. These were a total loss, nothing being paid for them by the glue factory and tannery which hauled them away. All of the cows were due to freshen in a month or so and 18 of them aborted as a result of the fright and the accompanying injuries.

The trial court charged that recovery could be had only for those cows which were actually on the right of way. The court also charged that "there can be no recovery in this case based solely upon fright" but that there could be a recovery for physical injuries suffered as a result of the stampede. The defendant's attorney asked the court to charge that there could be no recovery "for any injuries to any cattle unless they were actually struck by the train". The court declined to so charge.

The jury returned a verdict in favor of the plaintiff in the amount of $5,268. So far as can be determined upon an analysis of the proof, this represented an allowance of damages for the loss of about 23 or 24 cows, plus an allowance for the calves lost by abortion, and an allowance for the amount of the veterinarian's bill.

Upon this appeal, the defendant raises a question as to whether there were as many as 23 or 24 cows upon the right of way at the time of the episode but, in our opinion, there was sufficient evidence to permit the jury to find that that many cows were on the right of way.

The principal point relied upon by the defendant upon this appeal is the point raised by the requested charge. It is the defendant's contention that there can be no recovery of damages under section 52 of the Railroad Law except for animals actually struck by the train.

The pertinent part of section 52 of the Railroad Law reads as follows: "So long as such fences and cattle-guards are not made, or are not in good repair, the corporation, its lessee or other person in possession of its road, shall be liable for all damages done by their agents or engines or cars to any domestic animals thereon".

Under this statute, it is settled in this State that there can be no recovery for injuries to animals which strayed onto the right of way through a defect in the railroad fence and suffered injury by coming in contact with some stationary object on the railroad premises. The words "damages done by their agents or engines or cars" in the statute have been construed to mean that the railroad cannot be held liable unless there was some activity on its part (*Jimerson* v. *Erie R. R. Co.*, 203 N. Y. 518; *Knight* v. *New York, Lake Erie & Western R. R. Co.*, 99 N. Y. 25). However, where an activity, such as the operation of a train is involved, the railroad may be held liable for any injury caused by it, and there is no need to show any negligence in connection with it. The railroad's liability is based upon the breach of the fencing statute which allowed the cattle to get onto the right of way.

But the question then arises whether recovery is limited to injuries caused by actual collision with the train or whether recovery can also be had for injuries suffered by the animals because of fright caused by the approach of the train. This appears to be an open question in this State. In many States, proof of an actual collision is required (*Louisville, Evansville & St. Louis Ry. Co.* v. *Thomas*, 106 Ind. 10; *Foster* v. *St. Louis, Iron Mountain & Southern Ry. Co.*, 90 Mo. 116; see Ann. 163 A. L. R. 1233, 1258).

However, there are other States which, under statutes substantially similar to New York's, take the view that an actual collision is not essential (*Chicago, Burlington & Quincy R. R. Co.* v. *Cox*, 51 Neb. 479; *Meeker* v. *Northern Pacific R. R. Co.*, 21 Ore. 513; see, also, under statutes worded somewhat differently from New York's, *Young* v. *St. Louis, K. C. & N. Ry. Co.*, 44 Iowa 172; *Maher* v. *Winona & St. Peter R. R. Co.*, 31 Minn. 401; *Atchison Topeka & Santa Fe R. R. Co.* v. *Jones*, 20 Kan. 527).

This view seems to us to be the better one. There is nothing in the language of the New York statute which requires that

there be an actual collision between the train and the cattle. The primary purpose of the fencing statute is to prevent cattle from going onto the right of way and there being injured as the result of the operation of trains. The statute should be liberally construed in order " to effectuate the benign purpose of its framers " to protect the owners of domestic animals along the line of the railroad (*Tracy* v. *Troy & Boston R. R. Co.*, 38 N. Y. 433, 437).

As this case demonstrates, the danger of the cattle being injured as a result of fear caused by the approach of a train is as great as, if not greater than, the danger of their being injured by a direct collision. The question is simply one of proximate cause; if the operation of the train was the proximate cause of injury to cattle which would not have been in the area of danger except for the railroad's negligence in maintaining its fences, the railroad is liable under the statute.

The statement to the contrary in *Hyatt* v. *New York, Lake Erie & Western R. R. Co.* (64 Hun 542), relied upon by the defendant, was an obiter dictum, which we do not find persuasive.

The fact that the injuries were brought about through the medium of fright affords no reason for denying a recovery. This case offers an illustration of what has been characterized by the Law Revision Commission as " the external operation of fright " (1936 Report of N. Y. Law Rev. Comm., pp. 381, 439). The animals stampeded in an effort to escape from the danger which they believed threatened them and they were injured as a result of their falling down or running into each other in the course of the stampede. Fear merely served as a link in the chain of causation between the approach of the train and the physical trauma. There was a contact with an external object of some kind even though it was not the object which was under the control of the defendant. It has long been the law of this State that recovery can be had for physical injuries caused by the external operation of fright (*Twomley* v. *Central Park North & East Riv. R. R. Co.*, 69 N. Y. 158; *Cohn* v. *Ansonia Realty Co.*, 162 App. Div. 791; *Mundy* v. *Levy Bros. Realty Co.*, 184 App. Div. 467). There is no requirement " that the force proceed directly from defendant to plaintiff " (Harper & James, Torts, § 18.4, p. 1033; Bohlen and Polikoff, 32 Col. L. Rev., 409, 412–413).

This principle has been applied in many cases involving the frightening of animals (see, e.g., *Mason* v. *West*, 61 App. Div. 40). " If a horse be frightened by another and runs away with a carriage, and breaks it, or destroys his own life by running against a wall, there can be no doubt that an action will lie "

(*Moshier* v. *Utica & Schenectady R. R. Co.*, 8 Barb. 427, 433).
"It is, of course, commonplace to allow recovery where the defendant's negligence causes a horse or other animal to be frightened or shocked and, as an immediate reaction, the animal injures itself or the person or property of its owner or another" (Ann. 28 A. L. R. 2d 1101).

We believe that the evidence in this case authorized a finding by the jury that all of the cows, for the loss of which the jury allowed a recovery, had sustained external physical contacts of some kind in the course of the stampede. But even if it were found, in the case of some of the cows, that they had suffered physical injury solely as the result of the internal operation of fright without contact with any external object, recovery could still be had. In the case of injury to animals, recovery has never been denied on the ground of lack of an accompanying impact or contact. The requirement of an external contact as a guarantee of the authenticity of the claim has never been applied to animals. The danger of fabrication, which in the past deterred the courts from allowing recovery for personal injuries suffered without physical impact (*Mitchell* v. *Rochester Ry. Co.*, 151 N. Y. 107; cf. *Comstock* v. *Wilson*, 257 N. Y. 231), is a risk peculiar to human beings and is not present in the case of an injury to an animal. A "horse will not pretend even in the interest of his master" (Bohlen and Polikoff, 80 U. of Pa. L. Rev., 627, 631–632).

Even during the era when the courts denied recovery for injuries to human beings caused by fright without impact, they allowed recovery for such injuries to animals.

"In a case like the present one, we are not called upon to deal, subjectively, with the effects of fright on the animal frightened; but merely to ascertain, as a fact, whether or not, by reason of the existence of certain conditions, the market value of a chattel — the daily subject of barter and sale among men — has been lessened" (*Gillam* v. *Hogue*, 39 Pa. Superior Ct. 547, 549 [1909]).

"Whether the death be occasioned by external violence to the animal, or by an internal rupture, can make no difference in principle, if the fear which is the proximate cause of the injury was excited by an unlawful act of the defendants" (*Moshier v. Utica, etc. R. Co.*, 8 Barb. 427, 434 [1850]; Study on "Liability for Injuries Resulting from Fright or Shock", 1936 Report of N. Y. Law Rev. Comm., pp. 385, 444–445; McNiece, Psychic Injury and Tort Liability in New York, 24 St. John's L. Rev., 1, 50.).

Vt. 478; *Louisville & Nashville R. R. Co.* v. *Melton*, 158 Ala. 509; (See, also, *Thompson* v. *Green Mountain Power Corp.*, 120

*Maitland* v. *Twin City Aviation Corp.*, 254 Wis. 541; *MacGibbon* v. *Robinson*, [1953] 2 D. L. R. 689.)

The principle laid down in the early cases cited above is applicable a fortiori in this case, in view of the modern trend in the direction of allowing recovery for injuries to human beings caused by the internal operation of fright or other emotion without any impact or contact (Restatement, Torts, § 313, and § 436 and 1948 Supp. thereto; *Ferrara* v. *Galluchio*, 5 N Y 2d 16, 21; 25 Brooklyn L. Rev., 264; Prosser, Torts [2d ed.], § 37, pp. 176–181; 2 Harper & James, Torts, § 18.4, pp. 1033–1034).

To sum up, we hold: (1) that an actual collision between the railroad train and the animals is not required by the language of section 52 of the Railroad Law, in order to hold the railroad company liable in a case in which the animals entered upon the right of way through a defective portion of the railroad fence and were injured as the result of the operation of a train; (2) that there is no principle of law which bars a recovery for the injury to the animals merely because the injury was brought about by either the external or internal operation of fright.

The judgment and order appealed from should be affirmed, with costs.

All concur, WILLIAMS and GOLDMAN, JJ., in result. Present— KIMBALL, J. P., WILLIAMS, BASTOW, GOLDMAN and HALPERN, JJ.

Judgment and order affirmed, with costs.